## HOUSTON ICE & BREWING COMPANY v. E. R. SNEED.

Decided November 17, 1910.

**1.—Public Policy—Criminal Act—Indemnity—Deceit.**

It is against public policy to allow a recovery as indemnity for any agreement or act in violation of law; and this principle applies equally, whether the action was upon a contract to indemnity or for deceit by which the plaintiff was induced to do the act in ignorance of its unlawful character.

**2.—Same—Sale of Intoxicants—Case Stated.**

A dealer in alleged "soft drinks," in local option territory, having been prosecuted criminally and made to pay a fine for selling intoxicants, sued the parties from whom he had purchased the beverage for deceit in representing it as non-intoxicating, by which he was led to sell it in ignorance of its character. He recovered judgment for the fine, costs and attorney's fees so incurred and damages for humiliation by his prosecution and conviction. Held that such recovery was contrary to public policy and could not be sustained.

Appeal from the District Court of Erath County. Tried below before Hon. W. J. Oxford.

*A. P. Young* and *Eckford & Cooke,* for appellant.—The allegation of damage being only the damages resulting from a violation of a penal statute in selling said Hiawatha in prohibition territory, the law will not lend its support to enable plaintiff to recover reimbursement for the damages resulting from his violation of the law. Specht v. Collins, 87 Texas, 215; Aycock v. Braune, 66 Texas, 204; Reed v. Brewer, 90 Texas, 144; Kauffman v. Babcock, 67 Texas, 241; McGreal v. Wilson, 9 Texas, 426; Hall v. Coppell (U. S.), 19 L. Ed., 244; 15 Am. & Eng. Enc., 2d ed., 934 and 977; 22 Cyc., 83; 9 Cyc., 465; Brown v. First Nat. Bank, 24 L. R. A. (Ind.), 206; Collins v. Blanton, 2 Wis., 341; Crumpston v. Lambton, 51 Am. Dec. (Ohio), 442.

*Chandl r & Pannill, M. F. Martin,* and *J. C. George,* for appellee.—If a vendor by fraud practiced on the vendee has sold what he at the same time warranted the vendee may have his remedy either upon the practiced deceit or upon the warranty, and where the vendee relying upon the practiced deceit has without fault on his part been subjected to a criminal prosecution he can recover his damages therefor, where the offense is one, in which the good faith of the defendant cannot be interposed as a justification. Prescott v. Harris, 32 N. H., 101; Thweatt v. Jones, 1 Rand., 328; Person v. Skelton, 1 M. & W., 504.

LEVY, ASSOCIATE JUSTICE.—At the time in suit the law commonly known as the local option law was in force in Erath County, and appellee was engaged in the business, in Dublin, in that county, of selling by retail to the public non-intoxicating beverages. Appellant manufactures and sells to retailers what is denominated in the record a "soft drink" called "Hiawatha," made out of malted barley, rice, hops and artesian water, and containing between 1.5 and 2 per cent of alcohol.

It is claimed by appellant that the concoction does not contain sufficient alcohol to produce intoxication in any person when drunk by him in moderate quantities. Appellee purchased from appellant, through its authorized agent, a large quantity of the drink, and began to sell it as a beverage. Later he was tried and convicted, and on appeal the judgment was affirmed, for selling malt liquor capable of producing intoxication, without first having procured a license for the purpose of selling said liquor, and without first having paid the taxes due to the State and county. The fine, costs and attorney's fees paid by him amounted to $750. It was on evidence, decided by the jury, that the Hiawatha drink he sold was a malt liquor capable of producing intoxication, that he was held guilty of violating the tax and license law. There was evidence in that trial, as in the instant record, going to show that the drink is non-intoxicating, as well as evidence going to show that it is intoxicating. The transaction, which is relied on in the proof as the basis of the instant suit, as to the purchase and sale, is best given in the language of the appellee: "Some time in March, 1908, I met Mr. Tell Roberts, when he came to my place of business in Dublin representing the Houston Ice and Brewing Company, the defendant. At that time I was engaged in selling soft drinks in Dublin, Texas. Mr. Roberts proposed to sell me a barrel of Hiawatha. I told him I did not care to handle it unless it came under the law, and was not a violation of the law. I had no State license at the time. Mr. Roberts told me that the Hiawatha was non-intoxicating and that any little child could drink it, and that the company would guarantee that it would not intoxicate. I then told Mr. Roberts that if it was all right I would try it. He then said he would send and get me a barrel of it and place it with me. I bought the first barrel from him, and afterwards and altogether sold seven or eight barrels of it." He further stated that he relied upon the statements of Mr. Roberts as to the non-intoxicating qualities of Hiawatha as a drink, and that he would not have bought it or sold it except for the representation made that it was non-intoxicating. Claiming in his petition that the appellant, through its agent, in making the sale of the Hiawatha to him as a non-intoxicant and a concoction that could be lawfully sold in local option territory, "falsely and deceitfully represented to plaintiff that a certain liquid concoction called Hiawatha was non-intoxicating, and told this plaintiff at said time and place that this defendant warranted and guaranteed said Hiawatha to be non-intoxicating," the appellee sues to recover the sum of the fine, costs and attorney's fees in the criminal prosecution, and for mental anguish suffered on account of the arrest, trial and conviction as actual damages. The case was tried to the court without a jury, and judgment was rendered against appellant for the $750 paid out in the criminal prosecution, and $500 for mental anguish and humiliation in being arrested and convicted, as actual damages.

*After Stating the Case.*—The appellee makes the contention, in effect, in the case, that in the sale of the liquid concoction called Hiawatha

the appellant, through its agent, practiced the deceit on him that it was non-intoxicating; and that as a result of such wrongful act committed by appellant he has been plunged into a criminal prosecution and conviction for failure to pay an occupation tax required by law, which caused him to incur the penalties and costs of the law and to suffer mental anguish for conviction of such crime. The chief question presented by the assignments of appellant is, we think, whether the appellee is entitled to recover as actual damages, as by the judgment he has, such character of damages as the penalty and costs incurred and mental anguish suffered in consequence of his conviction for violating a penal law of the State. It may be conceded that in an action for deceit, as here, the law endeavors to give to the defrauded party the damages which result as the legal consequence, or directly, or naturally from such fraud. But this rule in allowing such damages as result from the fraud presupposes the claims to have the support of the law and be not in contravention of public policy. It results, therefore, that if the claim has no support in law as against public policy there can be no relief allowed the party, even though the damages would not be legally classed, if the claim were lawful, as too remote. And as the character of the claim here is that of a party himself committing a public offense seeking redress against the alleged procurer of his unlawful act, it would appear that the decision of the question presented would more properly turn on whether the damages should be denied as against public policy, than whether they are too remote. So, if the principle of public policy should apply and govern, it is not necessary to consider any question of whether there has been shown, or not, the conjunction of the wrong and damage, as that, even if the damages are not legally remote, they could not be allowable. The question bears analogy to those cases in which an indemnity is claimed for acts obviously unlawful, like breaches of the peace, and to those cases in which the conduct of the party is in contravention of public policy. The case of Cumpston v. Lambert, 18 Ohio, 81, 51 Am. Dec., 442, was where a justice of the peace called upon a person to assist a constable in making an arrest on a *capias pro fine,* stating that such arrest was legal and promising to indemnify such person for assisting to make the arrest; and it turned out that the arrest was illegal, and judgment was obtained against the party assisting for assault, who then brought suit. It was held the indemnity was illegal for the reason that it was based on an agreement to commit an assault on another. There the assault was a technical one, and the party acted on supposed legal authority and without intention of violating the criminal law. In the instant case appellee claims to have innocently violated the law through means of mistake of fact caused by appellant's agent. In the case of Pierson v. Thompson, 1 Edw. Ch. (N. Y.), 212, it was decided that a servant can not sustain an action on a bond of indemnity by his employer for the damages he has sustained by being compelled in a civil action to pay for an assault and battery he has committed. There the employee, in the management of

a ferry and while thus acting, and, as he supposed, in the discharge of his duty, used some violence towards two individuals in ejecting them from the boat. The court in denying a recovery for the damages, and after stating that the conduct of the party was by no means wanton and unprovoked acts, but on the contrary, uses this language: "Is he then entitled to an indemnity? The rule holds in equity as well as law that there shall be no right of contribution between joint wrong-doers. This rule is founded in public policy and intended to check the disposition to combine in committing wrongs by declaring that each individual concerned is liable to bear the whole loss or damage which may be occasioned; and it appears to be equally against the policy of the law that a servant or an agent who commits a trespass shall entertain even the hope of protection and indemnity from his employer." If the rule of public policy as applied to contribution between joint wrong-doers is "intended to check the disposition to combine in committing wrongs, by declaring that each individual concerned is liable to bear the whole loss or damage which may be occasioned," then with full force would it be applicable to those who commit public offenses, as here. If the instant suit had been on contract to indemnify, and the terms provided against liability for the fine and costs of the particular violation of the law, clearly the contract could not be legally sustained, as against public policy and void in consequence. Or if the suit had been on a guaranty, and such character of damages had been in the contemplation of the parties as the damages recoverable, it was an illegal contract as being "a contract to tempt a man to trespass the law." In the case of Aycock v. Braun, 66 Texas, 204, 18 S. W., 500, a recovery for services was denied to attorneys who contracted to secure the appointment of a certain person as administrator and to obtain sureties on his bond, because such contract was void as against public policy. The court remarked that the innocent purpose and intention of the attorneys was immaterial, and "the contract must be tried by its immediate tendency, and if that is vicious the innocent intentions of the party can not save it." See, on illegal contracts, Kauffman v. Babcock, 67 Texas, 241, 24 S. W., 878; Reed v. Brewer, 36 S. W., 99, 37 S. W., 418. In Arrington v. Sneed, 18 Texas, 135, it was ruled that because the legal services rendered by the attorney in procuring bail, summoning witnesses, and preparing the defense of his client, were mixed with such other character of services as were calculated to enable, if not to induce, him to elude the process of law, the law will not imply a promise to pay for them. In Stevens v. Roe, 59 N. H., 578, 47 Am. Dec., 231, in denying a judgment against a witness for giving false testimony, the court gives as a reason, "public policy and the safe administration of justice requires that witnesses, who are a necessary part of the judicial machinery, be privileged against any restraint excepting that imposed by the penalty for perjury." There are some cases of civil trespass where the indemnity was held valid, as where one tears down a turnpike gate at the direction of the overseer of the highway (Coventry v. Barton,

17 Johns., 142, 8 Am. Dec., 376), or removes goods at the employer's request that belong to a third person, having reasonable grounds to suppose that the employer owns them (Moore v. Appleton, 26 Ala., 633). But there the parties were in the prosecution of their legal right in good faith, and committed an unintentional wrong against another. The distinction is that there the trespass is against property, and does not involve the violation of the criminal laws. It is thus sufficiently seen that the principle involved is that it is against public policy to allow redress for any agreement or act in violation of law. We can see no good reason why it would not apply to the case here. To refuse such character of damages on a contract of indemnity because against public policy, and to allow the recovery of such character of damages because founded on deceit, is merely to change the form of the action, and by such indirection to nullify the principle. If it is against public policy and void in one form of action, no good reason exists why it should not be equally so in the other, as having in each suit the tendency to interfere with the due administration of the law. Punishment for crime is intended to be personal and absolute; and to accomplish the prevention of crime which is the purpose of the punishment it is quite necessary that the person should not "even entertain the hope of indemnity" for the offense committed. Therefore, as the penalty and cost of the violation of a penal law is not the legal subject-matter of contract for indemnity, we are of the opinion that it should be here held, as we do, that the damages recovered are not for the same reason allowable in this case. It would follow in principle that if the fine and costs of the prosecution are not allowable the balance of the damages could not be allowed. To allow damages for mental anguish suffered in consequence of his conviction, would in tendency make it profitable to violate the law, and oppose the principle of denying any redress for a violation of the law. The case of Philpot v. Taylor, 20 Am. Dec., 241, and there are others of like import, it is true, allowed, in a deceit suit, a recovery to plaintiff for his costs and expenses incurred, on the ground that they were the legal consequences of the wrongful act. But in these cases no public offense was committed, and the principle of public policy was not in any way involved. The instant case, however, is quite different.

As it manifestly appears that the appellee's cause of action is not such as the law will permit the particular recovery sought, the judgment will be reversed and here rendered for appellant with all costs.

*Reversed and rendered.*