Richard E. DOVER, Appellant,

v.

BAKER, BROWN, SHARMAN & PARKER; Robert C. Walker; Roger C. Jackson; Daniel H. Johnston, Jr.; Melton & Melton, CPA's; and Robert L. Erwin, Appellees.

No. 01–92–01193–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 17, 1993.

---

Kenneth R. Phillips, Houston, for appellant.

Sam W. Cruse, Jr., Billy Shepherd, John H. Boswell, Gene F. Creely, II, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and COHEN and MIRABAL, JJ.

## OPINION

COHEN, Justice.

Richard Dover appeals from a summary judgment granted in a legal and accounting malpractice case in favor of the appellees 1) the law firm of Baker, Brown, Sharman & Parker and some attorneys of that firm, Robert C. Walker, Roger C. Jackson and Daniel H. Johnston, Jr.; and 2) the accounting firm of Melton & Melton, CPA's, and its member, Robert L. Erwin. We affirm.

### Dover's Allegations

In late October of 1985, Dover asked Walker, a partner in Baker Brown, to represent him in an unusual real estate transaction (the "Western deal"). Recognizing the unorthodox nature of the proposed transaction, Dover specifically notified the attorneys he would not participate in the transaction if it would leave him exposed to civil or criminal liability.

Dover explained the proposed terms of the deal to Walker as follows:

a) Dover would form two corporations, Baypointe Investments, Inc. (Baypointe) and SKF, Inc. (SKF), and Dover would be the sole shareholder of both;

b) Baypointe would borrow from Western Savings Association (Western), in two separate loans, 100 percent of the appraised value of certain real estate that Baypointe was purchasing;

c) the advances on the two loans were to be used to: i) purchase the real estate; ii) generate a cash fund of at least $15 million (the cash fund) to be used as directed by Western; and iii) provide Baypointe with the use of any advanced proceeds over and above the proceeds used for the purchase of the real estate and the cash fund;

d) Baypointe would loan the cash fund to SKF; and

e) SKF would loan the cash fund to James Reagin, one of Western's borrowers.

Dover alleges that, prior to closing the Western deal, he asked Walker and Jackson, also a partner in Baker Brown, whether, after the purchase of the real estate and the loan to SKF, the proceeds remaining in Baypointe could properly be transferred to Dover. Dover contends Walker and Jackson advised him the proceeds could properly be transferred to Dover by way of a loan, which the attorneys would document. Relying on the advice and counsel of the attorneys, Dover agreed to participate in the transaction proposed by Western. Dover alleges that but for the attorneys' assurances, he would not have participated in the transaction.

The Western deal closed on November 12, 1985. At closing, Dover signed two applications for advance that contained false statements. Dover recognized the two affidavits were untrue, incorrect, and did not conform to the mechanics of the transaction. As such, Dover specifically presented the affidavits to the attorneys for their review. The attorneys acknowledged the affidavits were not accurate, but said the affidavits were not material to the transaction and that any inconsistencies in the affidavits were overcome by the balance of the documents. Based on the assurances of the attorneys, Dover signed the affidavits.

At closing, on November 12, 1985, the advanced loan proceeds were disbursed to:

a) purchase the real estate; and

b) loan the cash fund to SKF which, in turn, loaned the cash fund to Reagin.

Dover also alleges that, on November 12, 1985, Baypointe loaned Dover and John C. Riddle, a business associate of Dover's, a portion of the proceeds remaining after the preceding disbursements. Dover alleges the attorneys knew that he was to receive that portion, but the attorneys, however, did not prepare or execute any corporate resolutions authorizing, or promissory note evidencing, the transfer of those remaining proceeds.

In the summer of 1986, Dover engaged the accountants to prepare his individual tax return for 1985, as well as the 1985 corporate returns for Baypointe Investments, Inc. and SKF, Inc. Dover alleged he provided the accountants with all relevant and/or requested information.

The accountants notified Dover that the fund transfers from Baypointe Investments to Dover and Riddle were not adequately documented as loans. Dover informed the accountants that he believed the requisite documentation existed, and, because the attorneys were aware prior to closing that the transfer of those funds was contemplated, the attorneys should have the needed documents. Dover instructed the accountants to confer with the attorneys and for each of them to determine the steps necessary to document adequately the transfers of funds as loans.

The attorneys then sent Dover instruments to document the transfers to Dover and Riddle as loans. Dover executed the instruments relevant to his loan and forwarded to Riddle those documents relevant to his. Dover notified the accountants of these actions. Later, the accountants notified Dover that the tax returns for the year 1985 were ready for his signature and then for filing with the Internal Revenue Service (IRS). Erwin, acting on behalf of the accountants, signed the tax returns as "preparer." On his 1985 tax return, Dover did not report as income the money that Baypointe allegedly loaned him. Instead, Dover reported that money as income on his 1987 tax return. 1987 was the year

Baypointe allegedly forgave the debt owed by Dover.

In August of 1987, a petition of involuntary bankruptcy was filed against Baypointe Investments in the Houston division of bankruptcy court. Once he received notice of this, Dover notified the attorneys, who assured Dover that they were competent to represent Baypointe Investments in the bankruptcy proceeding. Based on those assurances, Dover engaged the attorneys to represent Baypointe Investments in the proceeding.

In September and October of 1987, while assisting the attorneys in the preparation of the schedules of assets and liabilities of Baypointe Investments, Dover specifically advised the attorneys of the existence of the loan to him from Baypointe Investments. Dover also advised the attorneys that the loan had been forgiven when it came due in February of 1987. The attorneys advised Dover that the forgiveness of that loan need not be revealed in the bankruptcy proceeding. Based on that advice, Dover, as president of Baypointe Investments, executed the schedules of assets and liabilities without making that disclosure. Dover asserts that but for the advice from the attorneys that the forgiveness of the debt need not be disclosed, Dover would not have executed the schedules as prepared by the attorneys.

In 1990, Dover was indicted on one count of tax evasion under 26 U.S.C. § 7201 (1988), and three counts of making and subscribing to false tax statements under 26 U.S.C. § 7206(1) (1988). The indictments were based on the fact that Dover did not report as income, on his 1985 tax return, the "loan" that Baypointe Investments made to him in 1985. Essentially, the United States was alleging the money Dover received from Baypointe Investments was not really a loan and should have been reported as income on Dover's 1985 tax return. Dover went to trial, and was convicted of all counts on July 3, 1990.

Dover was then indicted under 18 U.S.C. § 1014 (1988) on two counts of making false statements in connection with a loan. Those counts were based on the two false

applications for advance Dover signed to close the Western deal. Dover pled guilty on both counts.

## Proceedings Below

Dover filed malpractice claims against the attorneys and the accountants. On September 11, 1992, the attorneys moved for summary judgment on two grounds: 1) Dover's claims were barred by public policy; and 2) collateral estoppel. The attorneys notified all parties that the hearing on their motion for summary judgment was set for October 5, 1992, at 1:30 p.m.

The accountants filed a motion for summary judgment six days later, on September 17, asserting Dover's claims were barred by public policy, collateral estoppel, and limitations. Except for the statute of limitations claim, the motions were virtually identical.

Also on September 17, the accountants moved to shorten time and hear both the attorneys' and their motions on October 5, because they had two identical grounds. The accountants notified Dover by hand delivery the same day that: 1) the hearing on the motion to shorten time was set for 9:30 a.m. on October 5; and 2) if the judge granted the motion to shorten time, the hearing on the accountants' motion for summary judgment would be heard with the attorneys' motion at 1:30 p.m. on October 5.

Eleven days later, on September 28, 1992, Dover responded to the attorneys' motion for summary judgment and to the accountants' motion to shorten time. Dover asserted the accountants' motion should be denied because he had moved to Tennessee and needed time to prepare an affidavit in response to the statute of limitations claim. Dover did not respond to the accountants' motion for summary judgment.

The hearing on the motion to shorten time was held as scheduled at 9:30 a.m. on October 5. Dover did not appear, and the judge granted the motion.[1] At 1:30 p.m.

the same day, the hearing on both motions for summary judgment was held. Dover appeared. The judge granted summary judgment for the attorneys.

The trial judge also granted the accountants leave to file a supplemental answer. The accountants filed their first supplemental answer later that day, pleading the affirmative defenses of public policy, collateral estoppel/estoppel and statute of limitations. On October 9, 1992, the trial judge then granted summary judgment for the accountants.

In portions of his first and second points of error, Dover asserts the appellees failed to plead the affirmative defenses that formed the basis of their motions for summary judgment. Thus, Dover argues, the trial judge erred when he granted a summary judgment on the basis of those affirmative defenses.

■ An unpled affirmative defense may support a summary judgment if raised in a summary judgment motion, and the opposing party does not object by written response before judgment. *Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991). Dover did not object to the defenses asserted by any of the appellees. Moreover, the accountants had pleadings on file before judgment.

■ Dover asserts the trial judge erred in granting the accountants leave to file the first supplemental answer. We disagree. Rule 66 requires a trial judge to allow amendments to pleadings during trial "freely when ... the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." TEX.R.CIV.P. 66. These provisions give a broad right to amend pleadings, even during trial, provided that an opposing party is not surprised or prejudiced. *See Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939–41 (Tex.1990). The record here does not show Dover objected to the accountants' motion to file the

---

1. Counsel for Dover asserts he did not appear at the hearing due to his mistaken belief that the motion to shorten time and the motion for summary judgment would be heard together in the afternoon.

supplemental answer or moved for continuance. Thus, any error was waived.

Dover also asserts the trial judge erred in granting the accountant's motion to shorten time and claims the shortened time violated Tex.R.Civ.P. 1. Neither contention was presented to the trial court. Thus, nothing is preserved for review. Tex.R.App.P. 52(a). Moreover, Dover had more than the 14 days required by Tex.R.Civ.P. 166a to prepare his response (September 17—October 5).

 Dover filed an objection to the motion to shorten time, received notice of the hearing on that motion, but then failed to appear at the hearing. Later that day, Dover appeared at the hearing on the motion for summary judgment, but did not move for continuance or object to going forward. Thus, Dover waived any error regarding shortened time. *White v. Wah*, 789 S.W.2d 312, 319 (Tex.App.—Houston [1st Dist.] 1990, no writ); *see also Manhattan Constr. Co. v. Hood Lanco, Inc.*, 762 S.W.2d 617, 619 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

We hold that the affirmative defenses were properly presented.

We overrule this portion of points of error one and two.

### The Summary Judgments

In the remainder of points of error one and two, Dover asserts the trial judge erred in granting summary judgment for appellees because the grounds asserted do not support summary judgment. We review the summary judgment under the standard in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

Dover alleged the following causes of action:

*1) Malpractice by the Attorneys*
*Walker:*
a) failed to recognize that the transaction proposed by Western was in violation of state and federal regulations;
b) failed to recognize that the execution and delivery of the affidavits described above were in violation of federal law; and
c) failed to document the transfer of funds from Baypointe Investments, Inc. to Dover at the time of closing.
*Jackson:*
a) failed to recognize that the transfer of funds from Baypointe Investments, Inc. would be a taxable event under the Internal Revenue Code; and
b) failed to document the transfer of funds from Baypointe Investments, Inc. to Dover at the time of closing which caused such transfer to be deemed a taxable event under the Internal Revenue Code.
*Johnston:*
a) failed to recognize that the forgiveness of debt by Baypointe Investments, Inc. in favor of Dover was an event that should have been disclosed in the schedules of assets and liabilities of Baypointe Investments, Inc. as is required by the Bankruptcy Code; and
b) failed to recognize that the failure to disclose the forgiveness of debt by Baypointe Investments, Inc. in favor of Dover would constitute an estoppel against Dover to assert that the transfer of funds was a loan and not a distribution.

Dover alleged the malpractice of each attorney proximately caused damages for the loss of his business, for attorneys' fees and expenses incurred in his criminal trial, for loss of liberty, for loss of association with his family, and for the pain, suffering, humiliation, and mental anguish he suffered.

*2) Alleged Breach of Fiduciary Duty by the Attorneys*

Dover alleged the attorneys breached a fiduciary duty owed to him. Dover alleged that in the fall of 1985, Riddle owed the attorneys a large fee. Dover alleged the attorneys knew that closing the transaction would produce substantial sums of money for Riddle. Thus, Dover alleged, the judgment of the attorneys was clouded by their desire to see the transaction close so Riddle could pay their fee. Dover alleged the breach of fiduciary duty caused the same

damages as those caused by the alleged malpractice.

### 3) Alleged Malpractice by the Accountants and Erwin

Dover alleged that Erwin failed to fully review the documentation supporting Dover's 1985 tax return. Dover alleged the malpractice proximately caused damages for taxes due and owing for 1985, including penalties and interest, for the loss of his business, for his attorneys' fees and expenses incurred in his criminal trial, and for the loss of liberty, loss of association with his family, and for the pain, suffering, humiliation and mental anguish he suffered.

When a defendant moves for summary judgment based on an affirmative defense, it must conclusively establish all essential elements of the affirmative defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). Here, the summary judgments specify no grounds. Thus, they will be affirmed if any of the theories advanced are meritorious. *Insurance Co. of North Am. v. Security Ins. Co.*, 790 S.W.2d 407, 410 (Tex.App.—Houston [1st Dist.] 1990, no writ).

### Statute of Limitations

The accountants urged limitations as a basis for summary judgment. The judge signed a general order granting the accountants' summary judgment. A party seeking to overturn a summary judgment that rests on several independent grounds must assign error to each ground or the summary judgment will stand on any omitted ground. *Bailey v. Rodgers*, 631 S.W.2d 784, 786 (Tex.App.—Austin 1982, no writ). Dover has not assigned error to the statute of limitations claim. Consequently, the summary judgment for the accountants is affirmed. *San Jacinto River Auth., v. Duke*, 783 S.W.2d 209, 210 (Tex.1990); *Bailey*, 631 S.W.2d at 786.

### Collateral Estoppel/Estoppel

The attorneys asserted that, based on the criminal judgments, Dover was collaterally estopped and estopped from claiming he acted in justifiable reliance upon their legal advice, relying on *McCormick v. Texas Commerce Bank National Ass'n*, 751 S.W.2d 887, 889 (Tex.App.—Houston [14th Dist.] 1988, writ denied), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3199, 105 L.Ed.2d 706 (1989).

In *McCormick*, the defendant conspired to defraud a bank through a check kiting scheme and was convicted of conspiring to commit theft. The bank then sued the defendant for conspiring to commit fraud, and offered the criminal conviction to prove the fraud. The trial court found in the bank's favor, and the appellate court affirmed. 751 S.W.2d at 888. In affirming, the court of appeals held that the criminal judgment conclusively established in the civil proceeding that the defendant had committed the illegal act. 751 S.W.2d at 889. The court also held that the defendant was properly prevented from offering mitigating circumstances regarding the criminal conviction, specifically, the defendant's claim of inadequate representation of counsel. *Id.* at 889–90. The court reasoned that "the appropriate forum for attacking the criminal judgment was by appeal. A fully litigated issue should not be retried." *Id.* at 890.

*McCormick* looked to federal decisions to identify the prerequisites for giving offensive collateral estoppel effect to criminal judgments. The court noted that offensive collateral estoppel is established when:

1) the issue at stake was identical to that in the criminal case;

2) the issue had been actually litigated; and

3) determination of the issue was a critical and necessary part of the prior judgment.

*McCormick*, 751 S.W.2d at 889–90 (citing *United States v. Monkey*, 725 F.2d 1007, 1010 (5th Cir.1984)). When these requirements are satisfied, a party is estopped from attacking the judgment or any issue necessarily decided by the guilty verdict. *Id.* Thus, we look to those elements of collateral estoppel.

The real estate acquisition and financing transaction, and the way Dover reported those to the IRS, comprise the conduct that led to Dover's criminal convictions. Out of that conduct, Dover was convicted on one count of tax evasion, three counts of making and subscribing to false tax statements, and two counts of making false statements to a federally-insured institution. In his brief, Dover admits the listed criminal dispositions resulted from the closing and later documentation of the corporate transaction.

### 1) Tax Evasion

Dover was charged with tax evasion for his conduct in reporting the proceeds of the 1985 loan. After he pled not guilty, a jury found Dover guilty under the following statute:

> Any person who *wilfully* attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony....

26 U.S.C. § 7201 (1988) (emphasis added).

■ This statute requires proof beyond a reasonable doubt that Dover acted willfully and knowingly with the specific intent to evade his income tax obligation, that there was a tax deficiency, and that there was an affirmative act constituting the evasion. *See United States v. Kim*, 884 F.2d 189, 192 n. 1 (5th Cir.1989); *United States v. Daniels*, 617 F.2d 146, 148 (5th Cir.1980). It is not enough to show merely that a lesser tax was paid than was due, nor is it enough to show negligent, careless, or unintentional understatement of income; the government must demonstrate that the defendant willfully concealed and omitted from his return income he knew was taxable. *United States v. Garber*, 607 F.2d 92, 97 (5th Cir.1979). "Willfulness" as used in this section means voluntary, intentional violation of a known duty. *United States v. King*, 616 F.2d 1034, 1039, *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 829 (1980). Moreover, it is improper to charge a taxpayer with knowledge based solely on the fact that he signed the return. *United States v. Bass*, 425 F.2d 161, 163 (7th Cir.1970).

■ If a taxpayer can establish that he relied on advice and approval of his tax professionals, he will not be convicted of tax evasion. *Heller v. Plave*, 743 F.Supp. 1553, 1558 n. 3 (S.D.Fla.1990); *United States v. Meyer*, 808 F.2d 1304, 1306 (8th Cir.1987) (good-faith reliance on expert tax preparer may be defense in tax evasion charge, but only if taxpayer makes complete disclosure of all relevant facts).

### 2) Making and Subscribing to False Tax Statements

The jury found Dover guilty on three counts of making and subscribing to false tax statements under 26 U.S.C. § 7206(1), which reads:

> Any person who *willfully* makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter ... shall be guilty of a felony....

26 U.S.C. § 7206(1) (1988) (emphasis added).

■ To prove this offense, the government proved beyond a reasonable doubt both falsity as to a material matter in the tax return or statement, and Dover's knowledge of such falsity when he signed the return. *United States v. Marabelles*, 724 F.2d 1374, 1380 (9th Cir.1984). It is a valid defense if the taxpayer provides full information regarding taxable income and expenses to an accountant or other professional qualified to prepare federal tax returns and the taxpayer adopts and files the return without having reason to believe that it is incorrect. *United States v. Wilson*, 887 F.2d 69, 73 (5th Cir.1989).

### 3) Making False Statements to a Federally Insured Institution for Purposes of Obtaining Funds

Dover admits he knowingly executed two false affidavits. Based on that conduct, Dover pled guilty on two counts of making false statements to a federally-insured in-

stitution, under 18 U.S.C. § 1014, which reads:

> Whoever *knowingly* makes any false statement or report . . . for the purpose of influencing in any way the action of the [federally-insured institution] . . . shall be fined . . . or imprisoned . . . or both.

18 U.S.C. § 1014 (1988) (emphasis added).

■ The essential elements of the offense of making false statements to a federally-insured institution for purposes of obtaining funds are: 1) the defendant made a false statement to a bank; 2) he did so for the purpose of influencing the bank's actions; 3) the statement was false as to material facts; and 4) the defendant made the false statements *knowingly*. *United States v. Smith*, 838 F.2d 436, 439–40 (10th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1935, 104 L.Ed.2d 407 (1989) (emphasis added). Good faith is a defense to prosecution under section 1014. *See United States v. Ribaste*, 905 F.2d 1140, 1141 (8th Cir.1990) (where defendant did not inform GM in application for dealership of his legally enforceable gambling debts, defense of good faith belief that those debts were not legally enforceable was admissible).

■ We hold that a critical issue decided in each of these criminal convictions was that Dover participated in the corporate transaction knowingly and wilfully, and not out of justifiable reliance on appellees' advice. Dover could not have knowingly and wilfully engaged in the underlying transactions *and* engaged in those transactions in good faith mistaken reliance on appellees' advice. Under the criminal law, those findings were mutually exclusive.

Essentially, in each of Dover's civil claims, he asserts that the attorneys failed to deliver competent service and advice, that he acted in reliance on that poor advice, and that reliance led to his damages.

The issue of whether Dover acted in reliance on the attorneys' advice, however, was 1) the issue at stake in the criminal actions; 2) was actually litigated in the criminal actions; and 3) was a critical and necessary part of those prior judgments. As such, appellees have established the prerequisites necessary for offensive collateral estoppel. Thus, Dover is now estopped from asserting he relied on the advice of the attorneys, an issue necessarily decided by the guilty verdicts and pleas. *McCormick*, 751 S.W.2d at 889–90; *see also Boozier v. Hambrick*, 846 S.W.2d 593, 597–98 (Tex.App.—Houston [1st Dist.] 1993, no writ) (airport superintendent's conviction for assaulting police officer collaterally estopped him from denying the assault in later civil proceeding).

■ Dover contends that collateral estoppel does not apply here because appellees were not parties to the criminal action. Again, we disagree. Collateral estoppel does not require that appellees be parties; it is enough that Dover was a party to the criminal cases. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (citations omitted). "The doctrine applies when the party *against whom* collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Id.* (emphasis in original). Here, Dover had a full and fair opportunity to litigate the issue of reliance in the criminal actions.

■ Finally, Dover asserts that his criminal convictions are inadmissible evidence and cannot work as collateral estoppel in a subsequent civil proceeding. For support, Dover relies on *Ovalle v. Ovalle*, 604 S.W.2d 526, 528 (Tex.Civ.App.—Waco 1980, no writ), and *Dunham v. Pannell*, 263 F.2d 725, 728–29 (5th Cir.1959).

The identical contention was rejected in *McCormick*. "The cases cited by appellants pre-date rule 803(22),[2] do not involve

2. TEX.R.CIV.EVID. 803(22) reads:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 **(22) Judgment of Previous Conviction.** Evidence of a judgment, entered after a trial

or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a felony, to prove any fact essential to sustain the judgment of conviction. The pendency of an appeal renders such evidence inadmissible.

defendants who were adjudicated guilty or who pleaded guilty and are, therefore, inapplicable." 751 S.W.2d at 889. For identical reasons, we reject Dover's contention here.

In sum, the criminal judgments establish Dover participated in the underlying transactions knowingly and wilfully, not because he justifiably relied on appellees' advice. Thus, he cannot litigate that issue again. Because all Dover's civil actions were based on that allegation, appellees were entitled to summary judgment on each claim.

We overrule this portion of point of error one.

### Public Policy

Appellees assert that, as a matter of law, they are entitled to summary judgment because public policy does not allow a party to obtain relief in a civil action when the civil action is based on illegal acts. For support, appellees rely on *Gulf, C. & S.F. Ry. v. Johnson*, 71 Tex. 619, 9 S.W. 602 (1888), and *Houston Ice & Brewing Co. v. Sneed*, 132 S.W. 386 (Tex.Civ.App.—1910, writ dism'd).

In *Johnson*, the supreme court recognized that "no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party." 9 S.W. at 603. "In those cases where it is shown that, at the time of the injury, the plaintiff was engaged in the denounced or illegal act, the rule is, if the illegal act contributed to the injury, he cannot recover; but, if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude recovery." *Id.*

In *Houston Ice*, the plaintiff proved the defendant defrauded him by representing a "soft-drink" called "Hiawatha" was nonintoxicating when, in fact, the drink was intoxicating. Relying upon the defendant's false representations, the plaintiff sold the drink in his store, and was later convicted for selling the liquor without a license and without paying the liquor tax. In a nonjury trial, the judge rendered judgment in favor of the plaintiff, and awarded him damages for the mental anguish and expenses he suffered as a result of the criminal conviction. 132 S.W. 386–87.

On appeal, the appellate court reversed the judgment, recognizing that the plaintiff could not make any recovery based upon his illegal conduct. 132 S.W. at 389. The court analogized the case to several others holding there could be no right of contribution between joint wrongdoers, even when one of the wrongdoers acted without the intent to violate the law. The court noted that the rule was intended to deter people from combining to commit wrongs by declaring that each individual concerned is liable to bear the whole loss or damages that might be suffered. *Id.* The court stated:

> Punishment for crime is intended to be personal and absolute; and, to accomplish the prevention of crime which is the purpose of the punishment, it is quite necessary that the person should not "even entertain the hope of indemnity" for the offense committed. . . . To allow damages for mental anguish suffered in consequence of his conviction would in tendency make it profitable to violate the law, and oppose the principle of denying any redress for a violation of the law.

*Id.* at 388–89.

One Kentucky court of appeals noted that the cases cited for support in *Houston Ice* do not appear to be on point, and found the reasoning of the opinion unpersuasive. *See Owens v. Henderson Brewing Co.*, 185 Ky. 477, 215 S.W. 90, 92 (Ct.App.1919). In *Owens*, on almost identical facts, the Kentucky court held a plaintiff similarly situated to the one in *Houston Ice* had a valid cause of action that was not barred by public policy. *Id.*

Although some may question the outcome of *Houston Ice*, this appeal presents an easier question. Here, unlike the plaintiff in *Houston Ice*, Dover was found to have engaged in the underlying criminal activity *knowingly* and *willfully*. Under

these circumstances, where Dover was a knowing and wilful party to the illegal acts which contributed to his injury, public policy clearly bars him from bringing suit to recover damages resulting from those acts. *Johnson,* 9 S.W. at 903.

Dover asserts his causes of action should be allowed because they are based solely on the acts or omissions of appellees, and no act or omission on his part is a necessary element for him to prove his causes of action. For support, he relies on *Langford v. Pickens,* 288 S.W.2d 568, 574 (Tex.Civ. App.—Austin 1956, writ ref'd n.r.e.), and *Redgrave v. Wilkinson,* 208 S.W.2d 150, 152 (Tex.Civ.App.—Waco 1948, writ ref'd n.r.e.).

In *Langford,* the plaintiffs, who had turned over their drug and liquor business to the defendants to operate, sought an accounting and recovery of money the defendants held from allegedly illegal sales of liquor made with the plaintiffs' knowledge and consent. Finding no partnership, the trial court denied the plaintiffs relief. *Id.* at 574. The court of appeals affirmed without reaching the issue of whether the recovery of profits from the illegal transaction would have been allowed. *Id.* Thus, *Langford* is inapplicable here.

In *Redgrave,* the plaintiff brought suit for an accounting of a partnership in which he and the defendant were equal owners. 208 S.W.2d at 150. In their business, the parties used earnings from illegal gaming machines owned by the partnership to own and operate legal cigarette machines. *Id.* at 151. The appellate court found the legal and illegal activities of the partnership could be separated, and awarded an accounting as to the legal partnership activities. The court noted that "if a party can show a complete cause of action without being obliged to prove his own illegal act, although said illegal act may appear incidentally and may be important in explanation of other facts in the case, he may recover." 208 S.W.2d at 152 (citation omitted).

*Redgrave,* too, does not apply here. Unlike the plaintiff in *Redgrave,* Dover's suit is not based on a severable transaction, part legal and part illegal, made by a partnership. Dover's claims are for damages that resulted from the illegal business transactions in which he knowingly and willingly participated. His illegal conduct is not incidental to his claims; it is inextricably intertwined with those claims. Because Dover's illegal act contributed to his injury, the trial court correctly granted appellees' summary judgment on the grounds of public policy. *Johnson,* 9 S.W. at 603.

We overrule this portion of point of error one.

We affirm the summary judgments.