**David M. SAKS, James Doyle Spruill, and Omni/Corpus Christi, Ltd., A Texas Limited Partnership, Appellants,**

v.

**SAWTELLE, GOODE, DAVIDSON & TROILO, A Professional Corporation, Arthur C. Troilo and Phillip Yochem; Heard, Goggan, Blair & Williams, A Partnership, Oliver S. Heard, Jr., Thomas Goggan, III, Stephen S. Blair, Jim Blair, and Leslie H. Williams; and Richard R. Orsinger, Appellees.**

No. 04–92–00598–CV.

Court of Appeals of Texas,
San Antonio.

June 22, 1994.

Rehearing Denied July 7, 1994.

---

Jack B. Cowley, Law Offices of Jack B. Cowley, Allen, for appellant.

Richard J. Reynolds, III, Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, Ricardo G. Cedillo, Susan G. Lozano, Davis, Adami & Cedillo, Inc., Timothy Patton, Pozza & Patton, and George H. Spencer, Jr. and George H. Spencer, Clemens & Spencer, San Antonio, for appellee.

Before BUTTS, RICKHOFF and LOPEZ, JJ.

LOPEZ, Justice.

This is a legal malpractice case, in which summary judgment was granted for the attorney defendants. Appellants, David M. Saks and James Doyle Spruill, filed a lawsuit against Sawtelle, Goode, Davidson & Troilo— a professional corporation, and attorneys Arthur C. Troilo and Phillip Yochem [Sawtelle],[1] in order to recover damages arising out of legal services rendered in connection with a loan transaction—a transaction which

subsequently led to appellants' conviction on charges of bank fraud. Appellants also sued Heard, Goggan, Blair & Williams—a partnership, and attorneys Oliver S. Heard, Jr., Thomas Goggan III, Stephen S. Blair, Jim Blair and Leslie H. Williams [Heard],[2] and Richard R. Orsinger, in order to recover damages arising out of legal services rendered in a subsequent civil lawsuit between appellants and one of the money-lenders, Meridian Savings Association [Meridian]. In the lawsuit below, appellants asserted claims of malpractice against appellees based on negligence, gross negligence, misrepresentation, breach of express and implied warranties and deceptive trade practices. Saks and Spruill conducted the loan transaction through their limited partnership, Omni/Corpus Christi, Ltd. [Omni]. Omni intervened in the legal malpractice suit, asserting similar causes of action against appellees, and is also an appellant here. Various counterclaims and third-party actions were severed by the trial court and are not before us. The trial court granted each appellees' motion for summary judgment, each of which asserted that appellants' claims are precluded. Since appellants' damages were suffered by reason of their own illegal conduct, recovery is barred as a matter of law for reasons of public policy. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 1985, Saks and Spruill, vis a vis their partnership, Omni, borrowed approximately $19 million from three closely affiliated banks—Meridian, Peoples Savings and Loan Association and Security Savings Association [Security]—ostensibly to fund a development project in Corpus Christi. However, $5 million of the loan funds were subsequently diverted back to one of the banks, Security, in order to conceal a shortfall in Security's assets which was being scrutinized by federal bank regulators. Appellants therefore illegally participated in a scheme with several bank directors to disguise the true nature of the diverted funds,

---

**1.** For simplicity we will collectively refer to Sawtelle, Goode, Davidson & Troilo; Troilo and Yochem as "Sawtelle."

**2.** For simplicity, we will collectively refer to Heard, Goggan, Blair & Williams; Heard; Goggan; S. Blair; J. Blair and Williams as "Heard."

in violation of 18 U.S.C. §§ 2, 1344 and 18 U.S.C. § 371. They were convicted by a jury on five counts of bank fraud and one count of conspiracy to defraud the United States, and sentenced to federal prison in May of 1991. The jury was instructed that "the government had to prove beyond a reasonable doubt that [Saks, Spruill and Omni] *knowingly* devised and executed or attempted to execute a scheme of artifice to defraud a federally chartered or insured financial institution...." *United States v. Saks & United States v. Spruill,* 964 F.2d 1514, 1520 (5th Cir.1992) (Emphasis added. See pp. 1516–18 for a more comprehensive statement of the facts leading to the conviction). The Sawtelle firm assisted appellants in connection with the loan transaction and preparation of the loan documents.

Saks and Spruill, through Omni, defaulted on the Meridian loan and litigation ensued between appellants and Meridian in 1986 [the Meridian litigation]. The Heard firm, which at the time included Richard R. Orsinger, represented Saks and Spruill in the Meridian litigation, and obtained a favorable settlement of their claims against Meridian, which was due in part to Saks' and Spruill's allegations in pleadings and depositions that the loan was in fact a sham and a fraud. *See Saks & Spruill,* 964 F.2d at 1518. Damaging admissions from this civil suit were admitted into evidence at Saks' and Spruill's subsequent criminal trial. *Id.* at 1523–26.

After their convictions of bank fraud, Saks and Spruill brought this legal malpractice suit against Sawtelle, Heard and Orsinger to recover for lost income and profits, mental anguish, damage to reputation, loss of net worth, attorney's fees and etc., all of which stemmed from Saks' and Spruill's convictions resulting from their participation in the 1985 illegal loan transaction. Saks and Spruill each sought to recover in excess of $40 million. Their claims for recovery against Sawtelle arose out of allegedly negligent legal advice and services rendered to appellants in connection with the loan transaction. Specifically, they complained that Sawtelle was negligent in the preparation of the loan documents, failed to inform appellants of potential criminal violations arising from the transaction and misrepresented the legality of the loan transaction to appellants. Appellants' claims against Heard and Orsinger arose out of those attorneys' alleged failure, during the Meridian litigation, to advise appellants of the criminal liability to which their prior conduct exposed them.

Summary judgment was granted in favor of each of the appellees on the basis that appellants were precluded by public policy from pursuing their claims against appellees because their claims were grounded upon illegal acts. Appellants argue in three points of error pertaining to each group of appellees—Sawtelle, Heard and Orsinger—that the trial court erred in granting the three motions for summary judgment.

## II. SUMMARY JUDGMENT

Parties moving for summary judgment must show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movants. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movants, and any doubts will be resolved in their favor. *Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311.

For defendants, as movants, to prevail in the summary judgment, they must either disprove at least one necessary element of the plaintiffs' theory of recovery, or plead and conclusively establish each essential element of an affirmative defense. *International Union UAW Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied). Summary judgment for defendants, disposing of the entire case, is proper only if, as a matter of law, plaintiffs could not succeed on any theories pleaded. *Naranjo v. Southwest Indep. Sch. Dist.,* 777 S.W.2d 190, 191 (Tex.App.—San Antonio 1989, writ denied).

In this case, appellants alleged that the wrongful conduct of each appellee was a proximate and producing cause of the injuries and damages to the appellants. However, the injuries and damages specifically arose from appellants' knowing and willful acts which constituted fraud and conspiracy to commit fraud in violation of the laws of the United States. *See Saks & Spruill,* 954 F.2d at 1518. Taking the facts in the light most favorable to appellants, and assuming that appellees were indeed guilty of negligence or wrongdoing, this court must determine whether a client, who contends that his willful criminal act or criminal conviction directly resulted from an attorney's negligent services, can sue that attorney for legal malpractice. Since we find that appellants' malpractice lawsuit contravenes strong public policy principles in Texas, we find that as a matter of law, appellants' causes of action against appellees are defeated, and summary judgment is proper. *See infra* part III.

■ Appellants argue that the grant of appellees' respective motions for summary judgment was error under the Texas Supreme Court's holding in *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990), because the summary judgment did not separately address each of appellants' causes of action in disposing of the entire case. The summary judgment motion at issue in *Black* addressed the lack of material fact issues as to specific elements of several of the plaintiff's causes of action. *Id.* at 27. The trial court failed to address the essential elements of each pled cause of action in disposing of Black's entire case, and the supreme court reversed. In this case, the respective summary judgment motions filed by the appellees did not attack any specific elements of appellants' causes of action; rather, the motions here addressed the ability of appellants to bring *any* cause of action against appellees which is grounded on appellants' criminal acts. In *Black,* the supreme court stated:

> The movant must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively establishing all essential elements of his cause of action or defense as a matter of law. Summary judgment for

defendant is proper when the evidence establishes that . . . each element of an affirmative defense to plaintiff's cause of action is established as a matter of law. However, in order to conclusively establish the requisite essential element or elements, the motion must identify or address the cause of action *or defense* and its elements.

*Black,* 797 S.W.2d at 27 (citations omitted, emphasis added). Here, appellees properly established their public policy defense in their summary judgment motions, a defense which defeated all of appellants' claims for damages. Therefore, summary judgment properly disposed of all of appellants' claims.

### III.  PUBLIC POLICY

■ Can a client who contends that his willful criminal act or criminal conviction directly resulted from his attorney's negligent services sue that attorney for legal malpractice? We find that the answer in Texas is no. "It may be assumed, as undisputed doctrine, that no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party." *Gulf v. Johnson,* 71 Tex. 619, 9 S.W. 602, 603 (Tex.1888); *Houston Ice & Brewing Co. v. Sneed,* 132 S.W. 386, 388, 63 (Tex.Civ.App. 17 1910, writ dism'd).

The case most directly on point was recently decided by the court of appeals in Houston. *Dover v. Baker, Brown, Sharman & Parker,* 859 S.W.2d 441 (Tex.App.—Houston [1st Dist.] 1993, no writ). In *Dover,* a malpractice case, the court held that public policy barred recovery where plaintiff was a knowing and willful party to criminal acts which contributed to his injury. *Id.* at 441. Richard Dover was convicted of tax fraud. He brought malpractice claims against his accountants and attorneys, alleging that he committed the illegal acts on the advice of his accountants and attorneys. *Id.* at 444–45. The court of appeals held that, since a jury found that Dover had engaged in knowing and willful criminal acts which contributed to his injury, public policy clearly barred him from bringing suit to recover damages result-

ing from those acts. *Id.* at 450–51. *See Johnson,* 9 S.W. at 603.

■ Appellants, Saks, Spruill and Omni, were convicted of knowingly executing or attempting to execute a scheme to defraud a bank. *Saks & Spruill,* 964 F.2d at 1518. The Fifth Circuit, in affirming Saks' and Spruill's convictions, found that there was sufficient evidence for a jury to determine that Saks and Spruill possessed the requisite intent to defraud the banks. "The requisite intent is established if the defendant acted knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to himself." *Id.* at 1518 (citing *United States v. Gunter,* 876 F.2d 1113, 1120 (5th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989) and *United States v. St. Gelais,* 952 F.2d 90, 96 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992)). The government proved beyond a reasonable doubt that Saks and Spruill acted willfully and knowingly in the commission of their crimes.

We agree with the First District's reasoning in *Dover,* that public policy bars recovery for injuries arising from a knowing and willful crime. Saks, Spruill and Omni's illegal conduct "is not incidental to [their] claims; it is inextricably intertwined with those claims." *Dover,* 859 S.W.2d at 451. The Dallas court of appeals recently held that "any person who pleads guilty, remains convicted of an offense and is unable to prove innocence must accept his criminal conduct as the sole proximate cause of his indictment and conviction for that offense." *Peeler v. Hughes & Luce,* 868 S.W.2d 823 (Tex.App.—Dallas 1993, writ requested). While *Peeler* involves a malpractice action brought by a criminal defendant against her defense attorney who negligently advised her to plead guilty, the policy relied on by the court is applicable to this case as well. That basic policy is that individuals who have committed illegal acts shall not be permitted to profit financially or be otherwise indemnified from their crimes. *Id.* at 831–33. Saks, Spruill and Omni's causes of action against appellees are all for damages which resulted from their illegal

conduct in the loan transaction. They cannot profit from this illegal conduct.

Even if Sawtelle misrepresented the legality of the loan transaction to appellants, "[d]efendants cannot insulate themselves from criminal prosecution by the presence of a lawyer, even if he knows what is going on." *Saks & Spruill,* 964 F.2d at 1520. All of appellants' claims against Sawtelle arise from the actual criminal prosecution, in which a jury found that appellants acted knowingly to defraud the banks. Even if Sawtelle is guilty of negligence or misrepresentation, this fact is not relevant in light of the public policy which bars appellants from recovering compensation for the damages they incurred as a result of their conviction.

Heard and Orsinger may have acted negligently in failing to warn appellants that an exposure of the fraudulent nature of the bank loan in the Meridian litigation might lead to appellants' criminal prosecution. However, again all of appellants' claims against Heard and Orsinger arise from the criminal prosecution and subsequent conviction. Since appellants were found guilty of the crimes, which they willfully committed, as a matter of policy they cannot recover damages from Heard and Orsinger. Like the court of appeals in *Peeler,* "[w]e believe public policy supports denial of recovery for negligence or DTPA damages against a professional whose negligence or intentional acts may have exposed the criminal act of the professional's client, or may have even contributed to the institution of criminal proceedings against such plaintiff." *Peeler,* 868 S.W.2d at 822.

> Punishment for crime is intended to be personal and absolute; and, to accomplish the prevention of crime which is the purpose of the punishment, it is quite necessary that the person should not "even entertain the hope of indemnity" for the offense committed.... To allow damages ... suffered in consequence of [a] conviction would in tendency make it profitable to violate the law, and oppose the principle of denying any redress for a violation of the law.

*Houston Ice,* 132 S.W. at 388–89. We find that, as a matter of law, public policy pre-

cludes appellants' recovery of damages against appellees which resulted from appellants' willful commission of crimes.

Appellants argue that we are bound by the United States and Texas constitutions to allow them to submit issues of liability, causation, damages and comparative responsibility pursuant to the Texas Comparative Responsibility Act. TEX.CIV.PRAC. & REM.CODE § 33.001, et. seq. (Vernon 1986 & Supp.1994). They cite *Smith v. Sewell,* 858 S.W.2d 350 (Tex.1993), in support of their contention that proper application of the Comparative Responsibility Act requires the trial court to submit issues on causation to the jury, therefore potentially allowing appellants to recover damages in proportion to a jury finding of responsibility on the part of appellees. *See id.* at 356. In *Smith,* the supreme court held that an intoxicated plaintiff who is injured has a valid cause of action under chapter 2 of the Texas Alcoholic Beverage Code against the provider of the alcohol, and further held that the Comparative Responsibility Act was applicable to such actions. *Id.* at 351. Here, appellants' causes of action against appellees are barred by public policy, and are therefore invalid. As a matter of law, appellants' causes of action cannot be presented to a trier of fact; consequently, an analysis of comparative fault is not necessary.

## V.  CONCLUSION

We find that the case law and public policy principles in Texas support a holding that illegal acts committed knowingly and willfully cannot be a basis for recovery of damages. Since appellants' causes of action are all predicated on their illegal loan transaction and resulting fraud conviction, the trial court correctly granted summary judgment as to all appellees, and we affirm the summary judgment.