[Civ. No. 57548. Second Dist., Div. Three. Dec. 29, 1980.]

JULIAN WEINER, Plaintiff and Appellant, v.
MITCHELL, SILBERBERG & KNUPP et al.,
Defendants and Respondents.

COUNSEL

R. Milton Smith and Jerome A. Paver for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup and Jerry M. Custis for Defendants and Respondents.

OPINION

**COBEY, Acting P. J.**—Plaintiff, Julian Weiner, appeals from a judgment (Code Civ. Proc., § 581d) dismissing, pursuant to Code of Civil Procedure section 581, subdivision 3, this action following his noticed failure to amend further his second amended complaint as expressly authorized by the trial court in its minute order sustaining the various demurrers (both general and special) of defendants thereto.[1]

---

[1]The nonfictitious defendants in this action are Mitchell, Silberberg & Knupp, a law firm, and Edmund A. Hamburger, Arthur Groman and Howard A. Smith, partners therein.

## FACTS

Plaintiff in his second amended complaint attempted to state causes of action for malpractice, conspiracy, fraud and deceit, breach of fiduciary duty and interference with prospective advantage against the various defendants. He alleged in this pleading the following in his malpractice count. Mitchell, Silberberg & Knupp was a law firm which inferentially included, among others, the three individually named defendants. Plaintiff was a duly licensed certified public accountant of substantial experience and a senior partner in a large accounting firm which had grossed in the fiscal year ending September 1971 a total of $1.75 million, of which plaintiff's personal share was $160,000. On or about February 1, 1972, plaintiff apparently merged his accounting firm into the accounting firm of Seidman & Seidman in which he became a partner. At that time he recommended to his clients that they become clients of the Seidman firm, which they did.

Between March 30 and July 12, 1973, each of the defendants agreed orally and in writing to represent plaintiff competently and faithfully as his personal counsel without conflict of interest and with full disclosure of all material facts to him in an investigation then being conducted by the Securities Exchange Commission (SEC) and other public agencies relating to Equity Funding Corporation and its subsidiaries. Nevertheless defendant, Arthur Groman, and certain fictitious defendants attended certain meetings of the Seidman firm in early 1973, at which they agreed that the firm should terminate plaintiff but retain his former clients. Each of the defendants knowingly and willfully failed to disclose these meetings and this agreement to plaintiff or that the defendant law firm had already agreed to represent primarily the Seidman firm in the aforementioned investigation. Thereafter defendants knowingly and willfully failed to advise plaintiff to retain his own counsel in the investigation and failed to keep confidential any and all attorneys' work products and documents that plaintiff had turned over to them in the belief that they were acting exclusively as his personal counsel. Defendants then aided and abetted the Seidman firm in secreting audit workpapers relating to Equity Funding and the results of such audit while pretending to prepare plaintiff for his prospective testimony before the SEC and other agencies on behalf of the Seidman firm and as a partner therein. This led to plaintiff being wholly unprepared for and deprived of indispensable records in his testimony before the SEC with the result that he was thereafter criminally indicted for acts committed by others connected with the Seidman firm. Defendants explored

with the SEC and the other agencies involved whether they would condone the Seidman firm's conduct in consideration of its collaboration in obtaining plaintiff's indictment by surrendering to the investigating agencies confidential workpapers, etc. of plaintiff which he had entrusted to defendants in professional confidence. As a result of this duplicitous conduct on the part of defendants and their representation of these conflicting interests of the Seidman firm and plaintiff, plaintiff suffered the aforementioned indictment, the costly expense of a criminal trial, the loss of his substantial accounting practice and of his valuable professional reputation. Defendants engaged in this conduct knowingly, oppressively, with malice aforethought and with full knowledge of this conflict of interest. Plaintiff therefore sought punitive and exemplary damages from them in the sum of $15 million.

In his second alleged cause of action for conspiracy plaintiff incorporated the foregoing allegations from his first cause of action. He then alleged that defendants agreed among themselves and with others to deprive him of his professional practice and to make him the scapegoat of the Seidman firm's inadequate audits of Equity Funding Corporation through essentially the aforealleged misconduct.

In his third alleged cause of action for fraud and deceit, plaintiff again incorporated the allegations of his first cause of action. He then alleged that each of the defendants represented to him that they would act in his best legal interests and protect the same to the best of their ability, that these representations were made to plaintiff to induce him to retain defendants professionally in the aforementioned investigation and to induce him to turn over to them confidential papers and information of plaintiff necessary for his defense, that defendants nevertheless knew that these representations by them were false and that they were actually trying to protect the interests of the Seidman firm in the investigation, notwithstanding the fact that these legal interests were adverse to those of plaintiff, that plaintiff did rely upon these false representations of defendants and that as a direct and proximate result of such reliance plaintiff suffered the aforealleged damage, both compensatory and punitive.

In his fourth alleged cause of action for breach of fiduciary duty plaintiff once again realleged the allegations of his first cause of action. He further alleged that each of the defendants as his lawyers owed him the duty of utmost fidelity, which meant they had to keep his confidence, both oral and written, inviolate and not hide from him anything

they could properly use in his defense and not act in behalf of any legal interests of others where those interests were adverse to his. Plaintiff more specifically alleged that defendants were obligated to prepare him adequately for his appearances before the SEC and the other investigating agencies and to make available to him all papers and materials necessary for his proper defense in such investigation. According to this cause of action, however, defendants breached this fiduciary duty to plaintiff by failing and refusing to prepare him properly for his interviews with the SEC and others, by secreting from him confidential materials he had entrusted to them and by divulging to others, whose legal interests were adverse to his, plaintiff's confidential information they had obtained from him as his counsel. Plaintiff finally alleged in this cause of action that this misconduct by defendants had caused him the damages he had already alleged.

In his fifth alleged cause of action plaintiff incorporated once again all of the allegations of his first cause of action. He further alleged that, by and through the aforealleged misconduct of defendants, they intended to put him out of his accounting business, to ruin him, to deprive him of all of his clients and business, together with the good will thereof, for the benefit of the Seidman firm which they professionally represented, and that as a direct and proximate result of such misconduct plaintiff suffered the damages he had already alleged.[2]

Defendants thereafter demurred to plaintiff's second amended complaint, requested the trial court to judicially notice the opinion of the Ninth Circuit Court of Appeals in *United States* v. *Weiner* (9th Cir. 1978) 578 F.2d 757, in order to establish certain matters pertinent to their demurrers and moved to strike specified portions of this pleading relating to plaintiff's claim for punitive damages. After a hearing on these matters the trial court sustained defendants' demurrers to all of the causes of action alleged in plaintiff's second amended complaint on the grounds specified and took judicial notice of the just-mentioned fed-

---

[2]In recounting the allegations of misconduct alleged in the second amended complaint against defendant, Mitchell, Silberberg & Knupp, and the three partners of the law firm, also named as defendants herein, we do not mean to imply that such allegations are to any degree accurate. But under settled law, we must regard them as true, however improbable they may be (to the extent they are not impeached by matters properly judicially noticed), for the purpose of passing upon on appeal the validity of defendants' general demurrers to this pleading. (see *Stoney Creek Orchards* v. *State of University of California* (1970) 12 Cal.App.3d 903, 906 [91 Cal.Rptr. 139]; *Wong* v. *Regents of University of California* (1971) 15 Cal.App.3d 823, 829 [93 Cal.Rptr. 502]; *Viso* v. *State of California* (1979) 92 Cal.App.3d 15, 19 [154 Cal.Rptr. 580].)

eral *Weiner* decision. The court in its order, among other things, denied plaintiff leave to amend his pleading to incorporate any theory of liability predicated upon plaintiff's innocence of the charges proven against him in the federal prosecution. The court, however, granted plaintiff leave to amend his pleading within 30 days as to defendants' alleged failure to disclose to him the conflict of interest involved in their representation of the Seidman firm in the Equity Funding matter, with the alleged resulting loss to plaintiff of his accounting practice. The court aparently did not rule on defendants' motion to strike.

Thereafter, as already recited at the start of this opinion, the trial court dismissed this action after plaintiff had given notice that he would not further amend his second amended complaint in accordance with the authorization granted him. Following the filing of this appeal this court, on the motion and request of defendants, supplemented the record on appeal herein by adding thereto a duly certified copy of the decision and order of the State Board of Accountancy revoking plaintiff's certified public accountants certificate effective May 9, 1979.[3]

## DISCUSSION

1. *It is proper for this court to judicially notice the appellate opinion and a judgment in the Weiner criminal prosecution.*

■ Defendants requested, pursuant to Code of Civil Procedure sections 430.30, subdivision (a), and 430.70, that the trial court in ruling on their demurrers take judicial notice of pertinent facts stated in the opinion of the Ninth Circuit Court of Appeals and the judgment therein affirming plaintiff's conviction of securities fraud arising out of his employment as an auditor for Equity Funding Corporation. Plaintiff challenges the propriety of such notice.

It would seem that this federal appellate decision and judgment may be viewed as either an official act of the judicial department of the United States under Evidence Code section 452, subdivision (b) (*Swinerton & Walberg Co.* v. *City of Inglewood—L. A. County Civic Center Authority* (1974) 40 Cal.App.3d 98, 101, fn. 2 [114 Cal.Rptr. 834]), or as a record of a court of record of the United States under subdivision (d)(2) of the same section.

---

[3]At oral argument this court added to the record on appeal, at the separate requests of each party and without objection from either, certain excerpts from the transcript of the SEC's private investigation indicating how plaintiff was represented therein and his acquiescence, as a New York lawyer, in the limited representation he there received.

Plaintiff's challenge in this respect is based upon a line of five cases holding that while courts may take judicial notice of public records they may not take such notice of the truth of the matters stated therein. (*Beckley* v. *Reclamation Board* (1962) 205 Cal.App.2d 734, 753 [23 Cal.Rptr. 428] [appellate court opinions, etc.]; *Love* v. *Wolf* (1964) 226 Cal.App.2d 378, 403 [38 Cal.Rptr. 183] [transcript of congressional hearing]; *People* v. *Long* (1970) 7 Cal.App.3d 586, 591 [86 Cal.Rptr. 590] [juvenile court file, etc.]; *Day* v. *Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918] [averments on information and belief in affidavit]; *Ramsden* v. *Western Union* (1977) 71 Cal.App.3d 873, 878-879 [138 Cal.Rptr. 426] [arrest report].)

An examination of these five cases reveals that the basis for these holdings of improper judicial notice is that stated in *Day* v. *Sharp* at page 914, "'a court cannot take judicial notice of hearsay allegations as being true.'" (Italics omitted.) But that court went on to recognize expressly that a court may properly take judicial notice of the truth of facts asserted in documents such as orders, findings of fact, conclusions of law and judgments. (*Ibid.*) What the court in the *Beckley* case actually said, at page 753, of pertinence here was that courts may not judicially notice, in contradiction to a pleading, "generalizations in appellate decisions (in litigation involving other persons and other times) regarding topography and broad characterizations of waters and watercourses in a given area." This is a far cry from what we and the trial court have been asked to judicially notice in this case, which is instead specifics of plaintiff Weiner's misconduct with respect to matters inferentially covered by certain of his allegations in his challenged pleading.

The facts stated in an appellate opinion appear to us to possess generally an assurance of accuracy and reliability as great as those associated with the documents specifically mentioned and approved in *Day* v. *Sharp.* We know from our own personal experience in the writing of appellate opinions that every effort is made to make the statement of facts therein a completely accurate reflection of the record in the particulars discussed. Accordingly, we hold that it was proper for the trial court and it is proper for us in evaluating the validity of defendants' general demurrers to plaintiff's second amended complaint to take appropriate judicial notice of both the pertinent facts stated in the appellate opinion and of the judgment in the aforementioned *United States* v. *Weiner, supra,* 578 F.2d 757. (Cf. *Estate of Guerin* (1961) 194 Cal.App.2d 566, 569 [15 Cal.Rptr. 512].)

2. *In evaluating the propriety of the dismissal before us, we must consider not only the relevant allegations of plaintiff's second amended complaint but also the pertinent facts stated in the Weiner federal opinion and the judgment therein as well.*

■ A demurrer reaches not only the contents of the challenged pleading itself, but also such matters as may be properly considered under the doctrine of judicial notice. The pleading must be read as if it contained all matters of which the court could properly take judicial notice even in the face of allegations in the pleading to the contrary. (*Saltares* v. *Kristovich* (1970) 6 Cal.App.3d 504, 510 [85 Cal.Rptr. 866]; *Dryden* v. *Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 997 [135 Cal.Rptr. 720].)

3. *The pertinent facts stated in the Weiner federal opinion and the judgment therein established plaintiff Weiner's guilt of many of the charges set forth in the indictment against him.*

According to the Ninth Circuit opinion, Equity Funding was incorporated in 1960 to sell life insurance, mutual funds and "equity funding" programs. The company operated legitimately and profitably until 1964 when it began to publish inaccurate and false financial statements overstating its income and showing nonexistent assets in order to increase the market value of its stock. The members of plaintiff's accounting firm were the independent public accountants for Equity Funding from 1961 to 1971. In early 1972 plaintiff's firm merged into the accounting firm of Seidman & Seidman, which then became Equity Funding's independent public accountants until the exposure of the fraud in 1973. Plaintiff Weiner was the partner in both his firm and the Seidman firm in charge of the audits of Equity Funding from 1961 to 1973. He was convicted of six counts of securities fraud in accounting practices and four counts of willfully making untrue statements to the SEC and the New York or Pacific Coast Stock Exchanges. (*United States* v. *Weiner, supra,* 578 F.2d at p. 763.)

Again, according to this opinion, the Equity Funding account was a large part of the business of plaintiff's accounting firm and he worked with Equity Funding from almost its inception. He participated at critical stages in its financial decision-making and he knowingly and willfully participated in the purposeful fraud of its officers (*id.* at pp. 784-785), by which its umbrella asset account was overstated by $62 million. (*Id.* at pp. 777-778.)

4.  *The issue of the proximate causation of plaintiff's federal indict-
    ment is precluded in this litigation by its implicit prior
    determination in the federal criminal litigation.*

■ The federal criminal conviction of plaintiff Weiner determined
his guilt of many of the charges contained in the federal indictment re-
turned against him. This being so, the issue of his guilt of these charges
cannot under the doctrine of collateral estoppel be relitigated in this
litigation (see *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962)
58 Cal.2d 601, 607 [25 Cal.Rptr. 559, 375 P.2d 439]; *Swaffield* v. *Uni-
versal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 158-160, 172-173 [76
Cal.Rptr. 680]) and we must, therefore, accept as the proximate cause
of his indictment, and of all the damages which occurred to him by rea-
son of it, his guilt and his guilt alone. This means that all of the various
causes of action alleged in tort against defendants in plaintiff's second
amended complaint founder on the complete lack of proximate causa-
tion between the torts alleged therein and the injuries plaintiff alleg-
edly suffered thereby. Stated otherwise, without proximate causation
between the torts alleged and the damages allegedly suffered, there can
be no cause of action in tort. (See 4 Witkin, Summary of Cal. Law (8th
ed. 1974) Torts, §§ 488, 620, pp. 2749, 2901.) Accordingly, defendants'
general demurrers were properly sustained to the various causes of ac-
tion plaintiff attempted to allege in his second amended complaint.

DISPOSITION

The judgment of dismissal under appeal is affirmed.

Allport, J., and Potter, J., concurred.