**TITLE AGENCY OF TEXAS, INC., Appellant,**

v.

**John "Lee" ARELLANO, Appellee.**

**No. C14–91–00831–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 23, 1992.

Rehearing Denied Sept. 24, 1992.

Paul J. McConnell, III, Eugene J. Pitman, Ben A. Baring, Jr., Houston, for appellant.

Robert Schwartz, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

Title Agency of Texas, Inc. appeals from a judgment finding appellant negligent and in violation of the Texas Deceptive Trade Practices Act and awarding appellee $22,-000.00 in actual damages, $2,000.00 in additional damages, and attorney's fees. Appellant brings eight points of error. Because we find no evidence supporting the trial court's liability findings, we reverse and render judgment that appellee take nothing.

In January 1988, appellee entered into an earnest money contract to purchase a house. This sale closed in March 1988. Based upon a tax certificate from Dual H Tax Service showing the prior years' tax information, appellant prepared a settlement statement reflecting the amount of monthly escrow amounts required by Commonwealth Mortgage to be deposited by appellee at the closing. This document stated that the prorated amounts were based on figures for the prior year or were estimates for the current year. Appellee signed this document, certifying that he had reviewed it and received a copy of it.

Appellee testified that during closing he asked an agent of appellant what his monthly payment would be. According to appellee, this agent stated that appellee's monthly payment would include approximately $839.00 for principal and interest and $136.00 for escrow. After the closing, appellant sent the closing documents to Commonwealth Mortgage, who then determined the amount of payments for the first year. These monthly payments included an escrow amount identical to the amount represented by appellant at closing. Appellee paid this amount until approximately one year later, when appellee learned that his taxes would be $140.00 higher per month. Appellee filed suit, alleging violations of the DTPA and the Insurance Code, breach of contract, and negligence.

Following a bench trial, the court rendered judgment in favor of appellee. In its Findings of Fact and Conclusions of Law, the trial court found that appellant had misrepresented the amount of the required monthly tax escrow payment, that appellant was negligent in failing to determine correctly the ad valorem taxes that would be due on the property, and that this negligence was a proximate cause of appellee's damages. The trial court also found that appellant made misrepresentations about its services and failed to disclose information known at the time of the transaction, that his failure was intended to induce appellee to enter into the transaction, and that appellee would not have entered into the transaction had appellant disclosed this information. The trial court found that

this conduct was a violation of the DTPA and was a producing cause of appellee's damages; however, the trial court refused to find that the conduct was committed knowingly.

In point of error one, appellant challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that appellant's conduct was the proximate and producing cause of damage to appellee. In point of error two, appellant challenges the legal and factual sufficiency of the evidence supporting the trial court's findings regarding liability for negligence.

[1] Where a party attacks the legal sufficiency of an adverse finding, we must consider only the evidence and inferences that tend to support the finding, disregarding all contrary evidence and inferences. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If there is any evidence of probative force supporting the finding, we must uphold it. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989).

Where a party challenges the factual sufficiency of the evidence, we must consider all of the evidence supporting and contrary to the finding. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We may then set aside the finding only if the evidence is too weak to support it or if it is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Appellant first challenges the findings regarding proximate cause. "Proximate cause" is "that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred." 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.04 (1987). To be a proximate cause, the act or omission must also "be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom." *Id.* (emphasis in original).

Appellant contends that its actions could not have been a proximate cause of appellee's damages because the increase in taxes was the result of tax calculations by the taxing authority for subsequent years and not the result of appellant's actions. Appellant further argues that its only duty at closing was to calculate the prorations for taxes for the current year and that no breach of this duty occurred. Appellant cites *Bykowicz v. Pulte Home Corp.*, 950 F.2d 1046 (5th Cir.1992), *petition for cert. filed*, 60 U.S.L.W. 3843 (U.S. May 27, 1992) (No. 91–1910) in support of its assertion of no causation. In *Bykowicz*, the plaintiffs had bought homes from the defendant. *Id.* at 1048. The plaintiffs had received an "Investment Quotation" from representatives of defendant which listed monthly principal, interest and insurance payments, and monthly property tax escrow payments. *Id.* The investment quotation contained a statement that the information was estimated and was based on current prices and interest rates which were subject to change without notice. *Id.* The quotation also stated that taxes and insurance were estimated. *Id.* Plaintiffs' property taxes subsequently increased. *Id.* at 1049.

Based on their claim the defendants incorrectly calculated the tax estimates, the *Bykowicz* plaintiffs brought suit alleging negligence, gross negligence, and violations of the DTPA and of § 27.01 of the Texas Business and Commerce Code (regarding fraud in real estate transactions). *Id.* The trial court entered judgment on the verdict in favor of plaintiffs, but the Fifth Circuit reversed and rendered judgment in favor of the defendants. *Id.* at 1049–50. The Fifth Circuit first observed that the tax estimates related only to the year in which they were made and not to subsequent years. *Id.* at 1054. The court also noted that plaintiffs did not allege injuries for the year in which the tax estimates were prepared. *Id.* Furthermore, plaintiffs were on notice that the tax information was subject to change. *Id.* Reappraisals of the properties, and not the defendant's tax calculations resulted in the tax increases. *Id.* Thus, the court held that no evidence supported a finding of proximate cause. *Id.*

In this case, appellant prepared a document reflecting settlement charges to be paid by the buyer or the seller at closing. Under the heading "RESERVES DEPOSITED WITH LENDER," this document states that appellee would pay city property taxes in the amount of $120.20, which was a total of five payments at $24.04 per month. School property taxes to be paid by appellee at closing was $0.80, which included five payments at $0.16 per month. At the bottom of this document, just above the signature line, was a statement that the tax amounts were "based on figures for the previous year or estimates for the current year."

Appellee testified that he asked an agent of appellant at the closing what his monthly payment would be and that she told him he would pay approximately $839.00 toward principal and interest and $136.00 into escrow. In the document entitled "SETTLEMENT CHARGES," the monthly charges for escrow are listed. This is the only document reflecting monthly escrow charges. This document lists monthly escrow charges of $66.17 for hazard insurance, $45.56 for mortgage insurance, $24.04 for city property taxes, and $0.16 for school property taxes. These monthly charges total $135.93, or approximately $136.00. At the bottom of this document, the following certification appears:

SELLER'S AND BORROWER'S SIGNATURE HEREON ACKNOWLEDGES HIS/THEIR APPROVAL OF TAX PRORATIONS, AND SIGNIFIES THEIR UNDERSTANDING THAT PROATIONS [sic] *WERE BASED ON FIGURES FOR PRECEDING YEAR, OR ESTIMATES FOR CURRENT YEAR,* AND IN EVENT OF ANY CHANGES FOR CURRENT YEAR, ALL NECESSARY ADJUSTMENTS MUST BE MADE BETWEEN SELLER AND BORROWER DIRECT; LIKEWISE ANY DEFICIT IN DELINQUENT TAXES WILL BE REIMBURSED TO TITLE COMPANY BY THE SELLER. [Emphasis added].

Appellee signed this document, acknowledging that he had carefully reviewed it.

Appellant's oral representation that appellee's monthly escrow payment would be $136.00 was a total of the prorated monthly escrow payments reflected in the settlement document. Appellant advised appellee in writing that the prorated amounts, and the representation of the total of these amounts, were calculated from figures for the preceding year or were estimates of the taxes and insurance for the current year. Thus, appellee was on notice that the represented estimate pertained only to the year in which it was prepared.

Appellee agrees that the representation was based on estimates of taxes paid by the seller, who had received an over 65 exemption. Appellee further concedes that the representation of a monthly payment of $136.00 into escrow was correct for the first year of payments. Appellee's claims were that appellant should have disclosed the amount of property taxes appellee would pay in the future and not the amount paid by the seller who had an over 65 exemption. Appellee alleged and the trial court found that appellant's failure to calculate the taxes correctly was a breach of appellant's duty to correctly determine the ad valorem taxes. Appellee further alleged, and the trial court found, that appellant failed to disclose the amount appellant would pay without the over 65 exemption and that this lack of disclosure induced appellee to enter into a transaction he would not have entered, had he known about the property tax increase.

■ We disagree with the trial court's findings that appellant breached its duty to calculate taxes correctly and that this breach was the proximate cause of damage to appellee. As estimates for the year following the transaction, the amounts represented in the settlement document were correct. Furthermore, appellant's oral representation of the total amount from this document was also correct as an estimate for the year of the transaction. If, as the trial court held, appellant owed appellee the duty to calculate taxes correctly, appellant performed this duty by calculating the cor-

rect escrow amounts for the year of the transaction. Furthermore, appellant specified that the amounts were estimates. Because appellant advised appellee that the represented monthly escrow charges, totalling $136.00 per month, were based on figures for the previous year or constituted an estimate for the current year, and this estimate was correct for the year in which it was made, the trial court erred in allowing damages based on taxes for years subsequent to the one covered in the settlement document. *See Bykowicz,* 950 F.2d at 1052, 1054 Additionally, appellant made no representations other than the monthly prorations or the total of these charges and these representations were clearly limited to estimates for the current year. Thus, there was no evidence that appellant breached any duty to appellee.

■ Furthermore, appellant's calculations were not the cause of appellee's damages. The tax increase alleged as damages occurred in the year after that for which the prorations were calculated. The taxing authority's determination that appellee was not entitled to an over 65 exemption resulted in the tax increase. Appellee was on notice that the prorated monthly escrow charges, as well as the total of these amounts, were based either on figures for the previous year or reflected an estimate of charges for the current year. Thus, no evidence supports the trial court's conclusion that appellant's conduct was a proximate cause of any injury to appellee. We sustain points of error one and two to the extent they challenge the trial court's findings of breach of duty and proximate causation.

■ In point of error one, appellant also challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that appellant's conduct in violation of the DTPA was a producing cause of appellee's damages. "Producing Cause" means "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any." *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). A producing or contributing cause is equivalent to the "cause

in fact" element of proximate cause, *cf. Connecticut Gen. Life Ins. Co. v. Stice,* 640 S.W.2d 955, 959 (Tex.Civ.App.—Dallas 1982, writ ref'd n.r.e.), but producing cause lacks the element of foreseeability embraced within the standard of proximate causation. *Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956, 959 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.).

■ According to the findings of fact, the conduct that produced appellee's damages was appellant's failure to disclose information concerning services which was known at the time of the transaction. The trial court found that this failure was intended to induce appellee into a transaction which he would not have entered had appellant disclosed the information. The trial court also found appellant "represented that its services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they did not have."

Just as we held that no evidence supports a finding of proximate cause, we find no evidence supporting the trial court's finding of producing cause. The settlement document put appellee on notice that the prorated escrow amounts were based on figures for the previous year or were estimates for the current year. Appellant's oral representation of the total of these prorations did not constitute a representation about the escrow amounts appellee would have to pay beyond the year of the transaction. Appellant's representation at closing of the total escrow payment was accurate in the year for which the escrow charges were estimated. Thus, appellant's calculation of a total of the prorations, estimated only for the year of the transaction, was not a producing cause of tax increases in subsequent years. *See Bykowicz,* 950 F.2d at 1054. Because no evidence supports the trial court's finding of producing cause, we sustain point of error one.

Having found no evidence supporting the trial court's findings of breach of duty, proximate cause, and producing cause, we need not address appellant's remaining points of error. We reverse and render judgment that appellee take nothing.