Carol PEELER, Appellant,

v.

HUGHES & LUCE, and Darrell E. Jordan, Appellees.

No. 05–92–01541–CV.

Court of Appeals of Texas, Dallas.

Oct. 11, 1993.

Rehearing Denied Dec. 2, 1993.

Arnold Anderson Vickery, Houston, for appellant.

James E. Coleman Jr. and Marvin S. Sloman, Dallas, for appellees.

Before THOMAS, OVARD and MORRIS, JJ.

## OPINION

OVARD, Justice.

This is a legal malpractice case. Appellant Carol Peeler claims that appellees, her for-

mer attorney Darrell Jordan and the Hughes & Luce law firm where Jordan is a partner, failed to inform her of an offer of immunity from prosecution while she was under investigation for federal offenses. She was subsequently indicted and convicted of aiding in the preparation of a fraudulent partnership tax return. She asserts that appellees' failure to convey the immunity offer to her caused her indictment and conviction, resulting in her injuries. Appellees moved for summary judgment contending, among other grounds, that appellant's own actions caused her injuries and that the judgment should be affirmed for policy reasons. The trial court granted summary judgment for appellees. The decisive issue is whether appellant's admitted criminal conduct, for which she pleaded guilty, was convicted, and sought no postconviction relief prior to the summary judgment hearing, proximately caused her injuries, to the exclusion of the alleged malpractice by appellees. For policy reasons set out below, we agree with the trial court that appellant's indictment and conviction were proximately caused by her actions and not by any acts or omissions of appellees. Consequently, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was an officer with Hillcrest Equities, Inc., a corporation trading in securities, when she and other individuals came under federal criminal investigation by the IRS. Appellant hired appellees, specifically Darrell Jordan, to represent her and paid him a substantial retainer fee. Summary judgment evidence showed that an assistant United States Attorney in charge of the investigation telephoned Jordan and unequivocally offered transactional immunity from prosecution for appellant in exchange for her cooperation in the investigation.[1]

Jordan did not communicate any offer of immunity to appellant and did not respond to the assistant U.S. Attorney. Appellant alleges that Jordan did not inform her because he was being "loyal" to other defendants.[2]

A federal grand jury indicted appellant and other Hillcrest principals for various offenses. Another suspect accepted immunity and provided the government information used to prosecute the others, including appellant.

Appellant pleaded guilty to count eighteen of a twenty-one count indictment against her. Count eighteen charged her with the offense of "aiding and assisting the filing of a false and fraudulent U.S. Partnership Return of Income for Byrd Investments." She signed a plea agreement admitting her guilt to count eighteen. She also admitted her guilt in open court and testified her plea of guilty was made freely and voluntarily. In addition, appellant admitted in a deposition that she was guilty of nineteen of the other counts of the indictment. She was assessed a probated sentence and a fine.

Appellant said she pleaded guilty on the advice of attorneys with Hughes & Luce. She learned of the alleged immunity offer three days after her guilty plea. She sued appellees for legal malpractice claiming that their failure to communicate the offer of immunity caused her to be indicted and convicted. She sought damages under theories of negligence, gross negligence, violation of the Deceptive Trade Practices–Consumer Protection Act (DTPA),[3] breach of contract, and breach of implied warranty.

Appellees moved for summary judgment on four grounds:

(a) Appellant would not have received immunity;

(b) The immunity offer was unauthorized and was not actually an offer;

1. Jordan adamantly denies such offer was made.

2. At least one other defendant was represented by Hughes & Luce. The defense was attempting a tactic known as the "Gideon Initiative." It was described as a defense plan to send a representative to Washington to work out an arrangement with the IRS wherein the case would be handled as a civil rather than criminal matter for all defendants under investigation.

3. Tex.Bus. & Com.Code Ann. §§ 17.41–.81 (Vernon 1987 & Supp.1993).

(c) For policy and other reasons, appellant's own conduct, not appellees', was the proximate or producing cause of her indictment and conviction; and

(d) Appellant did not attempt to withdraw her plea or have her conviction set aside.

The judgment states that the trial court specifically overruled grounds (a) and (b) and specifically granted judgment for appellees on grounds (c) and (d). After the summary judgment, appellant filed a motion with the federal court to vacate its judgment on her plea.

Appellant contests the trial court's judgment only on the negligence, gross negligence, and DTPA claims. Specifically, she contends in eleven points of error that the trial court erred because (a) her conduct was not the sole proximate, superseding, or supervening cause of her indictment and conviction; (b) no Texas public policy prohibits her claim; (c) no elements of exhaustion of remedies or innocence are required; (d) the DTPA supports her claim; (e) postconviction relief was properly sought, though not required; and (f) the judgment violates the Equal Protection Clause, the Open Courts Provision, and the "outlawry" provision of the Texas Constitution. In their reply points, appellees urge us to consider the two additional grounds for summary judgment that the trial court specifically rejected.

## SUMMARY JUDGMENT STANDARD OF REVIEW

 This Court reviews this summary judgment record by applying the following standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). For defendants, as movants, to prevail in the summary judgment, they must either disprove at least one necessary element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense thereby rebutting the plaintiff's cause of action. *International Union UAW Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 563 (Tex.App.–Dallas 1991, writ denied). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). The summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, plaintiff could not succeed upon any theories pleaded. *See Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). Here, appellees sought to show that appellant's own actions caused any damages to her rather than any conduct on their part.

## APPLICABLE LAW—CAUSATION

### General Principles

In points of error four, five, six, and seven, appellant challenges the trial court's judgment on her tort claims to the extent that it finds her conduct, and not any actions or failure to act by Jordan, was the proximate cause of her indictment and conviction. In point eleven she contends the trial court's rulings were contrary to the law and policy of the DTPA because Jordan's failure to communicate the offer produced her injuries. Thus, we focus on the causation element.

### Proximate cause

 An attorney malpractice action can be based in negligence or gross negligence. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989). The attorney is held to the standard of care that a reasonably prudent attorney would exercise. *Id.* Negligence claims consist of the following elements: (1) a duty owed to the plaintiff; (2) a breach of that

duty; and (3) damages proximately caused by the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). To establish such a claim, the plaintiff must show the attorney's actions or failure to act were the proximate cause of his damages. *See id.; El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Proximate cause is legal causation and embraces two concepts: the cause-in-fact of an event and the foreseeability of the event. Both elements must be present to establish proximate causation. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 755 (Tex.1975). There can be more than one proximate cause. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Wal–Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 590 (Tex.App.—Texarkana 1992, no writ). The proximate cause of an injurious event is that which, "in a natural and continuous sequence, unbroken by any new and independent cause, produces the injury and without which the injury would not have occurred." *Winograd v. Clear Lake City Water Auth.,* 811 S.W.2d 147, 156 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

If a plaintiff can establish this causation, he may be able to collect both actual and, with additional proof, exemplary damages. *Montfort v. Jeter,* 567 S.W.2d 498, 500 (Tex. 1978); *Fillion v. Troy,* 656 S.W.2d 912, 915 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). He may also be able to collect damages for mental anguish. *Cosgrove,* 774 S.W.2d at 666.

### Producing cause

■■■ Causation is a necessary element of a claim under the DTPA. Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon 1987). Under the DTPA, a plaintiff must show the malfeasance was the producing cause of his injuries. Tex.Bus. & Com.Code Ann. § 17.50 (Vernon 1987). Producing cause has been defined as "an efficient, exciting or contributing cause, which in a natural and continuous

sequence, [produced] the event complained of. There can be more than one producing cause of an event." *Rourke v. Garza,* 511 S.W.2d 331, 339 (Tex.Civ.App.–Houston [1st Dist.] 1974), *aff'd,* 530 S.W.2d 794 (Tex.1975). Producing cause is sometimes referred to as factual causation. *Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex.App.—Dallas 1988, no writ). Producing causation requires the same factual causation as proximate causation, and only lacks the element of "foreseeability" embraced by the standard of proximate causation. *Id.* If a plaintiff can establish producing causation, treble damages are available under the DTPA. Tex.Bus. & Com. Code Ann. § 17.50(b)(1) (Vernon Supp.1993).

### CAUSATION—by Criminal Defense Attorney

#### Texas Authority

■■■ Although the general rules surrounding the causation element in a malpractice claim are well settled, the law concerning claims against criminal defense attorneys is not conclusive. The Texas Supreme Court has not directly addressed causation in this context, and although a few Texas courts of appeals have touched on the subject, they have not provided definitive rulings on the issue of causation in a claim against a criminal defense attorney. One appellate court has held that the same elements apply to all attorney malpractice cases, civil as well as criminal. *See Tijerina v. Wennermark,* 700 S.W.2d 342, 344 (Tex.App.—San Antonio 1985, no writ). Another court required an appellant to show that the attorney's inaction in failing to disclose material information was the proximate cause of some injury to the client. *Wright v. Lewis,* 777 S.W.2d 520, 522 (Tex.App.—Corpus Christi 1989, writ denied).[4] One court reasoned that because the Texas Court of Criminal Appeals previously held that the criminal defendant was not rendered ineffective assistance of counsel, his

---

4. The *Wright* case did deal with a claim against a criminal defense attorney and did state that a plaintiff in such an action would be required to prove proximate cause. However, the court did not discuss whether a person who admits guilt of the offense would be able to prove such causation.

legal malpractice claim must be denied. *Garcia v. Ray,* 556 S.W.2d 870, 872 (Tex.Civ. App.—Corpus Christi 1977, writ dism'd). That court also pointed out that the criminal defendant did not allege his innocence. *Id.* at 872. None of the foregoing cases applies directly to our issue.

The Supreme Court of Texas has recognized that "proximate cause eventually mandates weighing of policy[5] considerations." *City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex.1987). It went on to agree with this Court that, in considering policy, proximate cause is a " 'practical test, a test of common experience applied to human conduct.' " *Id.* at 518 (quoting *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 236 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)).

The legislature and the courts of Texas, when determining policy issues concerning illegal conduct, have consistently decided that a person cannot derive financial benefit from his criminal acts. In support of that policy, for instance, Texas prohibits a person who willfully brings about the death of an insured from obtaining any of the life insurance proceeds from the insured's death. TEX.INS. CODE ANN. art. 21.23 (Vernon Supp.1993). As a further example, the law does not allow a party to enforce an illegal contract. *Flynn Bros., Inc. v. First Medical Assocs.* 715 S.W.2d 782, 785 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Moreover, the courts will not enforce a contract whose provisions are against public policy. *Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180 (Tex.App.—Dallas 1986, no writ).

Because Texas courts have not specifically determined this issue of proximate or producing causation in the criminal malpractice context by utilizing public policy, we review the law of our sister jurisdictions that have evaluated causation under similar circumstances and rendered specific rulings on this subject for guidance.

### Authority From Other Jurisdictions

A majority of states that have directly addressed the issue of attorney malpractice

in the context of representing criminal defendants have developed a different standard from that used in other civil cases. These states have considered competing policies in determining under what circumstances a criminal defendant may bring a malpractice suit against his defense attorney. In considering public policy concerns and constitutional protections afforded the accused, most have ruled that the plaintiff must also establish his factual innocence of the underlying offense. *See Weiner v. Mitchell, Silberberg, & Knupp,* 114 Cal.App.3d 39, 170 Cal.Rptr. 533, 538 (1981); *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783, 785 (1991); *State ex. rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 503 (Mo. Ct.App.1985); *Carmel v. Lunney,* 70 N.Y.2d 169, 518 N.Y.S.2d 605, 607, 511 N.E.2d 1126, 1128 (1987); *B.K. Indus., Inc. v. Pinks,* 143 A.D.2d 963, 533 N.Y.S.2d 595, 596–97 (1988); *Claudio v. Heller,* 119 Misc.2d 432, 463 N.Y.S.2d 155, 156–57 (1983); *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 113 (1993).

These decisions emphasize that public policy prohibits criminal defendants from profiting from their criminal acts, either directly or indirectly. The Judicial Supreme Court of Massachusetts expressed the basis for the holdings as:

> [t]he underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime.

*Glenn,* 569 N.E.2d at 788. A Missouri state court concluded that to permit the defendant who had pleaded guilty to the offense to pursue a malpractice action against his attorney would allow the defendant "to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own

---

5. A review of the record shows that cases that included public policy considerations in determining proximate cause were presented to the trial court in the case at bar.

crime." *O'Blennis,* 691 S.W.2d at 503–04 (quoting *In re Estate of Laspy,* 409 S.W.2d 725 (Mo.Ct.App.1966)). That court went on to explain that policy prohibited the suit against the attorney because to allow the suit "would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *Id.*

That policy requires finding that a defendant's criminal actions are the sole proximate cause of his indictment and conviction; thus, a guilty criminal defendant cannot bring a negligence cause of action against his attorney. *See Carmel,* 518 N.Y.S.2d at 607, 511 N.E.2d at 1128 (affirming summary judgment based on proximate causation); *Weiner,* 170 Cal.Rptr. at 538; *B.K. Indus.,* 533 N.Y.S.2d at 597; *Claudio,* 463 N.Y.S.2d at 156–57. In *Weiner,* the court held that it "must accept as the proximate cause of his indictment, and of all the damages which occurred to him by reason of it, his guilt and his guilt alone.... Stated otherwise, without proximate causation between the torts alleged and the damages allegedly suffered, there can be no cause of action in tort." *Weiner,* 170 Cal.Rptr. at 538.

In *Carmel,* the court also applied such a public policy analysis. In that case, a criminal defendant sued his former attorney for malpractice after the defendant had been indicted, pleaded guilty, and was convicted. He alleged, among other things, that his attorney did not inform him of the possibility of immunity if he cooperated. The attorney moved for summary judgment on the grounds that the defendant's guilt was the proximate cause of any damages suffered. The court agreed, saying, "because he cannot assert innocence, public policy prevents maintenance of a malpractice action against his attorney." *Carmel,* 518 N.Y.S.2d at 607, 511 N.E.2d at 1128. Because a guilty criminal defendant cannot prove that any act or failure to act by his attorney proximately caused his injuries, he cannot establish the essential elements of a tort cause of action. *Weiner,* 170 Cal.Rptr. at 538.

In supporting the public policy that a guilty criminal cannot be enriched directly or indirectly from his criminal conduct, other jurisdictions have required proof of innocence as an additional *element* of a claim that a defense attorney was negligent. *See Glenn,* 569 N.E.2d at 788 ("plaintiff ... must prove by a preponderance of the evidence not only that the negligence of the attorney defendant caused him harm, but also that he is innocent of the crime charged"); *O'Blennis,* 691 S.W.2d at 503 ("factual innocence of [the] charge is an indispensable element of his cause of action"). These cases hold that public policy requires that a defendant must plead and prove innocence as a part of his negligence cause of action against the former attorney as a matter of law. *Glenn,* 569 N.E.2d at 786.

The Supreme Courts of Pennsylvania and Alaska provide the most recent decisions concerning policy considerations in cases where criminal defendants sue their attorneys for malpractice. Both courts have gone so far as to require the plaintiff to obtain postconviction relief from the underlying criminal offense in order to ensure that a convicted criminal is prohibited from profiting financially from the crime. Without such relief, the plaintiff cannot prevail. *See Shaw v. Alaska Dept. of Admin.,* 816 P.2d 1358, 1360 (Alaska 1991); *Bailey,* 621 A.2d at 115.

The reasoning for requiring postconviction relief is twofold: one is that public policy dictates against deriving financial gain, directly or indirectly, from criminal acts; the other is that criminal prosecutions contain certain constitutional and procedural safeguards designed to protect criminal defendants from overreaching governmental actions. These safeguards make criminal malpractice cases unique. *See Shaw,* 816 P.2d at 1360 (citing *Carmel,* 511 N.E.2d at 1128). The *Shaw* court went on to explain that absent postconviction relief, proximate cause could not be established. *See Shaw,* 816 P.2d at 1361. One court has indicated that postconviction relief is relevant to a proximate cause analysis. *See Claudio,* 463 N.Y.S.2d at 157.

The *Bailey* court also required the plaintiff to prove innocence of the underlying offense.

*See Bailey,* 621 A.2d at 111–12. That court went on to hold, however, that a plaintiff, even if convicted, could pursue a breach of contract action against his defense attorney. *See Bailey,* 621 A.2d at 115. In a breach of contract action, the criminal defendant would not be required to prove proximate or producing cause, innocence, or ineffective assistance of counsel, or obtain postconviction relief. Under Pennsylvania law, the court in *Bailey* said a defendant would need to prove only that he had an agreement with the attorney and did not receive the benefits of representation to which he was entitled under the contract. *See id.* The damages in such a claim would be limited to the amount of fees paid. *Id.*

Opposing these holdings, the Supreme Court of Ohio has held that a criminal defendant may recover against his attorney for malpractice without obtaining postconviction relief or proving innocence. *Krahn v. Kinney,* 43 Ohio St.3d 103, 538 N.E.2d 1058, 1061 (1989).

It is significant to point out that the New York and Pennsylvania courts had previously viewed civil and criminal malpractice cases as the same and, as in *Krahn,* did not require proof of innocence. However, they revised their decisions and required proof of innocence once they considered public policy. *See Carmel,* 511 N.E.2d at 1128; *Bailey,* 621 A.2d at 113.

### DISCUSSION

Our research convinces us that this is an issue of first impression in Texas jurisprudence. We must determine, regarding causation of the tort and DTPA claims, whether through negligence or malfeasance, appellees proximately caused appellant's indictment and conviction, or whether appellant, who admits being guilty of the offense, should be held solely responsible for her injuries flowing from the illegal acts she committed.

We consider competing public policies in making this determination. *See City of Gladewater,* 727 S.W.2d at 518; *Cook Consultants,* 700 S.W.2d at 236. The United States Supreme Court and Texas courts have recognized that states have an interest in preventing criminals from profiting from their crimes. *See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* —— U.S. ——, ——, 112 S.Ct. 501, 510, 116 L.Ed.2d 476 (1991); *cf. Flynn,* 715 S.W.2d at 785 (courts will not enforce illegal contracts); *Parks v. Dumas,* 321 S.W.2d 653, 655 (Tex. Civ.App.—Fort Worth 1959, no writ) (constructive trust imposed to prevent murderer of parents from inheriting and thus profiting from his wrong); *Friedman v. Martini Tile & Terrazzo Co.,* 298 S.W.2d 221, 225 (Tex. Civ.App.—Fort Worth 1957, no writ) (it is against public policy for tortfeasor to profit from dereliction).

### MALPRACTICE—Policy Considerations

We are persuaded by the common thread woven throughout the majority of jurisdictions that have held that an individual who committed a criminal offense is prohibited from prevailing in a tort claim against his defense attorney unless he can prove his innocence. Specifically, we agree that under such policy, appellant's admitted criminal conduct, not the later actions or inaction of her attorney, is in fact the proximate cause of her injuries, the indictment and conviction. *See Weiner,* 170 Cal.Rptr. at 538; *Carmel,* 511 N.E.2d at 1128. We do so because to hold otherwise would permit appellant to become eligible for additional mental anguish or punitive damages and thereby acquire a financial gain indirectly from the crime. *See Dan Boone Mitsubishi, Inc. v. Ebrom,* 830 S.W.2d 334, 336–37 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Fillion,* 656 S.W.2d at 915. Further, recovery under the DTPA would allow treble damages. TEX. BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon 1987).

We hold that, as a matter of law, a person who admits guilt of a crime and remains convicted of that crime cannot establish that any actions or omissions by his attorney were the proximate or producing cause of the indictment or conviction. Instead, the defen-

dant must accept that his illegal conduct necessarily set in motion whatever criminal process arose from the actions and, accordingly, is the proximate and producing cause of those processes. *See Weiner,* 170 Cal. Rptr. at 538.

■ Further, we hold that the requirement regarding postconviction relief or proof of innocence is not an additional *element* in a cause of action for malpractice. It is a prerequisite to being able to prove one of the elements of negligence. A criminal defendant must prove innocence before he can prove that his attorney's actions were the proximate cause of his damages. If a criminal defendant obtains postconviction relief and proves by a preponderance of the evidence that he is innocent of the underlying offense, he has then satisfied this prerequisite and may be able to prove his attorney's malpractice was the proximate cause of his injuries.

■ Our holding concerning proximate causation in negligence claims also applies to producing cause in a DTPA action. A criminal defendant cannot establish the producing causation element because producing causation requires proof of the same cause in fact as proximate causation. *See Connecticut Gen. Life Ins. Co. v. Stice,* 640 S.W.2d 955, 959 (Tex.App.—Dallas 1982, writ ref'd n.r.e.); *Title Agency of Texas,* 835 S.W.2d 750, 754–55 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Accordingly, we hold that if a plaintiff cannot establish the cause-in-fact element of proximate cause, then the plaintiff cannot establish producing cause. *See Title Agency of Texas,* 835 S.W.2d at 755.

## MALPRACTICE—Appellant's arguments

Appellant argues that a holding that her actions, and not appellees' failure to inform her of the immunity offer, are the proximate cause of her damages favors criminal defense lawyers over other lawyers and all other professionals. She intimates that the majority rule was formulated to favor and protect lawyers, specifically in this case "politically powerful, prestigious lawyers."

While appellant makes this allegation, she has neither directed us to, nor have we found any Texas case where a convicted criminal defendant has successfully maintained a malpractice action against an attorney whom the criminal defendant alleges caused his indictment or conviction, where the defendant's own criminal acts were involved. Further, we are not aware of a case where other professionals would be held liable under circumstances where a plaintiff would be financially rewarded from a criminal violation; that is, where the plaintiff would be compensated for another's negligent acts related to his own crime. We believe public policy supports denial of recovery for negligence or DTPA damages against a professional whose negligence or intentional acts may have exposed the criminal act of the professional's client, or may have even contributed to the institution of criminal proceedings against such plaintiff.

In response to appellant's allegation, we point out that we recognize that the elements are the same in both civil and criminal legal malpractice as well as in other professional malpractice claims. In each case, a plaintiff must establish that a duty was owed, that the duty was breached, and that the breach of the duty proximately caused injuries to the plaintiff. *See Greater Houston Transp. Co.,* 801 S.W.2d at 525. Likewise, in DTPA actions, plaintiffs must prove the producing cause of their injuries. *See* TEX.BUS. & COM. CODE ANN. § 17.50(a) (Vernon 1987). Our holding does not favor criminal defense attorneys by creating additional elements to the cause of action; rather, we agree with the states that hold that a convicted criminal who has admitted guilt necessarily sets in motion whatever criminal process arises from the illegal conduct. Consequently, because appellant has unequivocally admitted her guilt of the offense, public policy requires that we treat her actions as the sole proximate cause of her indictment and conviction. *See Weiner,* 170 Cal.Rptr. at 538; *Carmel,* 511 N.E.2d at 1128. Accordingly, Jordan's alleged failure to communicate the immunity offer cannot be the proximate cause of appellant's

indictment and conviction. We support the public policy that prohibits financial gain resulting from criminal acts and conclude that any acts or omissions by appellees are not the proximate cause of the indictment or conviction.

There are two competing policies to be balanced: one is the policy against allowing criminal defendants to profit from their crimes, the other is the policy against allowing criminal defense attorneys to profit from their negligence. On balance, the policy against allowing profit from crime outweighs the policy against allowing profit from negligence. We hold that public policy prohibits appellant's recovery even though appellees may inadvertently be permitted to profit from their alleged negligence.

Appellant relies primarily on *Krahn v. Kinney*, 43 Ohio St.3d 103, 538 N.E.2d 1058, 1061 (1989) in support of her position that the treatment of cases of criminal defense attorneys' malpractice should be no different from any other case. She reminds us that the court in *Krahn* did not require proof of innocence or postconviction relief in a malpractice suit against the criminal defendant's own lawyer. In *Krahn*, however, the court did not address the issues of public policy, the plaintiff's innocence, and his possible indirect financial gain from the crime. The *Shaw* court directly addressed and disagreed with *Krahn*. *See Shaw*, 816 P.2d at 1362 n. 6. We also disagree with *Krahn* because the holding permits a guilty criminal defendant to financially benefit from his crime.

Instead, a guilty criminal defendant must accept the consequences of his illegal conduct. Appellees presented evidence that appellant admitted her guilt, entered a guilty plea, was convicted of the offense, and obtained no postconviction relief prior to summary judgment. Because there was no fact question as to whether she was innocent of the offense, her actions were the proximate and producing cause of her indictment and her conviction.[6]

Appellant further asserts that denying her claims is unfair and unjust because she has no recourse, while appellees allegedly provided incompetent services and retained the $250,000 fee she paid them. Appellant brought a breach of contract action at the trial level in this case. She elected, however, not to pursue the breach of contract claim on appeal. Accordingly, we are not called upon to express an opinion regarding whether a criminal defendant would be foreclosed from bringing a cause of action for restitution against his attorney without proving innocence or seeking postconviction relief. *See Bailey*, 621 A.2d at 115. We note that the *Bailey* court balanced the policy considerations and determined that a breach of contract[7] action was the appropriate means of redress in this type of case because it would prevent attorneys from committing negligent or deceptive acts with financial impunity. *See id.* However, appellant did not present this issue on appeal.

She also argues that policy considerations allow criminals to be released from jail because their attorneys are declared ineffective, and therefore, policy should not prohibit her malpractice claim. We disagree. A criminal defendant is not necessarily released from jail if his attorney is declared ineffective; rather, whether the defendant is eventually released from custody depends upon the nature of the charges, bond considerations, and the outcome of the resulting new trial.

We overrule appellant's points of error four, five, six, and seven.

## POSTCONVICTION RELIEF AND APPELLEES' CROSS-POINTS

In points of error one and three, appellant challenges the trial court's grant of summary

6. Appellant asserts that she was innocent of the original crime for which she was investigated. This is outside the record. Further, her assertion is irrelevant because she must establish proximate causation for her damages, the indictment and conviction on the charges that she unequivocally admitted committing.

7. *But see Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988) (for purposes of the statute of limitations, an attorney-malpractice case is in the nature of a tort).

judgment on the basis that she failed to obtain postconviction relief. In their reply points, appellees request this Court to consider their two grounds for summary judgment set out earlier in this opinion, which were expressly overruled. Because we affirm the trial court's summary judgment based on proximate and producing causation, we need not address the other grounds for summary judgment. Consideration of these alternative grounds is not necessary to the disposition of the case. We overrule appellant's points of error one and three and appellees' cross points eleven and twelve.

■■■■ In point of error two, appellant contends the trial court erred in denying her request for a new trial after she complied with his alleged ruling [8] that she must move for postconviction relief in her criminal case to prevail in her civil case. A trial court has wide discretion in granting a new trial, and this discretion will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. VanWinkle*, 660 S.W.2d 807, 809 (Tex.1983). Appellant has cited no authority in support of her argument and we find none. We hold the trial court did not abuse its discretion. *Id.* We overrule point of error two.

### OPEN COURTS

■■■ In her ninth point of error, appellant maintains the summary judgment against her violates the open courts provision in the Texas Constitution. She asserts that the judgment "clearly and permanently closes the doors of the courthouse to her, barring her rights of access and redress."

■■■■ The constitution provides:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX.CONST. art. I, § 13. The open courts provision is based on the premise that the legislature cannot make a remedy contingent on an impossible condition. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex. 1990). The Texas Supreme Court has enunciated the test for analyzing a violation of the open courts provision of the constitution. The statute must unreasonably abridge a justiciable right to obtain redress for injuries caused by the wrongful acts of another to the extent that it operates as a denial of due process. *Sax v. Votteler*, 648 S.W.2d 661, 665 (Tex.1983). A litigant must show he has a cognizable common-law cause of action that is being restricted by statute and that the restriction is unreasonable or arbitrary when balanced against the purpose of the statute. *Sax*, 648 S.W.2d at 666. Thus, the purpose of the open courts provision is to preserve common-law causes of action against arbitrary statutory infringement.

■■■ Because appellant does not challenge a statutory enactment that infringes on a common-law cause of action, we conclude the open courts provision is inapplicable in this case. Further, if the open courts provision applied to this case, restricting such suits brought by criminals is permissible because of the policy of the State of Texas to prevent criminals from profiting from their wrongful acts. *See generally Timmons v. Luce*, 840 S.W.2d 582, 585 (Tex.App.—Tyler 1992, no writ) (considering purpose behind legislation, statute allowing dismissal of prisoner's frivolous suit does not violate open courts provision); *Stout v. Grand Prairie Indep. Sch. Dist.*, 733 S.W.2d 290, 293 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (statute limiting suits by students against teachers serves a "broader purpose" and open courts provision not violated). We overrule appellant's ninth point of error.

### EQUAL PROTECTION

■■■ Appellant complains in her eighth point of error that the trial court's judgment violates the equal protection clause of the Texas Constitution, which reads:

> All free men, when they form a social compact, have equal rights, and no man, or

---

**8.** Appellant does not cite to the record showing such a ruling.

set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

TEX.CONST. art. I, § 3. She claims that the ruling differentiates between criminal legal malpractice plaintiffs and other legal malpractice plaintiffs.

Criminal defendants are not members of a suspect class. *See McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973) (discussing comparable equal protection clause of federal constitution). Therefore, a state's action need only be rationally related to a legitimate state interest to withstand scrutiny under the equal protection clause. *Whitworth v. Bynum,* 699 S.W.2d 194, 197 (Tex.1985). As states have a "compelling interest" in preventing criminals from profiting from their crimes, the trial court's ruling is in keeping with public policy and compelling interests of this State and thus is rationally related to a legitimate state interest. *See Simon & Schuster,* —— U.S. at ——, 112 S.Ct. at 510. We hold the trial court's decision does not violate the equal protection clause of the Texas Constitution. We overrule appellant's eighth point of error.

## OUTLAWRY

■ In her tenth point of error, appellant claims the trial court's judgment violates the section of the Texas Constitution which provides that "no citizen shall be outlawed." *See* TEX.CONST. art. I, § 20. Appellant argues that our holding brands her as an outlaw and is in violation of the Texas Constitution. Her argument is misplaced. This Court has recognized that even an incarcerated felon has the right to initiate a civil action unrelated to his conviction or imprisonment. *See Brewer v. Taylor,* 737 S.W.2d 421, 423 n. 2 (Tex. App.—Dallas 1987, no writ). Our holding neither prevents all lawsuits by those convicted of crimes, nor denies appellant's rights generally.

Appellant argues that we should not prohibit her from recovering purely because she is a convicted felon. We disagree. Our holding does not prevent a convicted defen-

dant from proving her innocence and obtaining relief. Further, we have not said that a person cannot bring a claim because he is an "outlaw," but we have recognized that individuals who admittedly committed illegal acts cannot establish the requisite causation element of a tort or DTPA actions against their criminal defense attorney. We overrule appellant's tenth point of error.

## CONCLUSION

As we pass upon this issue of first impression in Texas, we adopt the rule that is called for based upon considerations of legal principles and public policy. We hold that any person who pleads guilty, remains convicted of an offense and is unable to prove innocence must accept his criminal conduct as the sole proximate cause of his indictment and conviction for that offense. Our holding follows the basic policy recognized by a majority of state courts and legislatures, including Texas; that policy requires an individual not be permitted to derive financial gain stemming, whether directly or indirectly, from an illegal act committed by that person. To do otherwise would entitle criminals to use the justice system to profit incidentally through their crimes. Consequently, we affirm the trial court's judgment.