**Opinion filed August 31, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00209-CV

_____

## IVA HODGES, Appellant

## V.

## FIRST TEXAS TITLE COMPANY, LLC, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 48,398-A**

## M E M O R A N D U M   O P I N I O N

Iva Hodges sued First Texas Title Company, LLC (First Texas) and others for several claims that she alleged arose out of the sale of her unimproved real property. The gist of Hodges's claims is that she signed a contract to convey her property upon terms to which she purportedly did not agree. Specifically, the contract and the

warranty deed did not contain a reservation of her royalty and mineral interest. But Hodges signed the contract even though she knew that it did not include a reservation. She also signed the warranty deed even though she knew that it did not reserve her royalty and mineral interest and even though she also knew that the buyers had not agreed to her reservation of her royalty and mineral interest.

Hodges sued First Texas, the escrow agent, and she claimed that it misled her about the consequences of her execution of the deed that complied with the express terms of the contract she had signed. First Texas moved for summary judgment on traditional and no-evidence grounds. The trial court granted First Texas's motion and dismissed all of Hodges's claims against First Texas. In two issues, Hodges argues that the trial court erred when it granted summary judgment in favor of First Texas. We affirm.

## I. *Background Information*

Hodges owned a tract of real property together with an interest in the minerals.[1] Hodges decided to sell her property and contacted Jerry Manske, a real estate agent with Panian & Mash LP, a Coldwell Banker real estate firm, to list her property for sale. Hodges explained to Manske that, in addition to the surface estate, she would include her royalty and mineral interest if the property sold for her full asking price.[2] But Hodges also told him that, if the property sold for less than that full price, then she wanted to reserve her royalty and mineral interest. Manske told her that he had buyers for the property—Tommy Ross and Dayna Ross.

---

[1]An attorney for First Texas, Andy McCall, stated in his affidavit that Hodges had indicated that she received a royalty payment on her interest in the tract of real property.

[2]Hodges presented no evidence of her full asking price. The contract had an original price of $150,000, but that was marked out and the price of $167,500 was inserted.

*A. The Contract*

Manske sent a contract for the sale of Hodges's real property[3] to her for her to review and sign.[4]  The contract not only contained typewritten terms, it also contained several handwritten changes.  All of the changes were initialed by the Rosses and Hodges except for one change that is not relevant to our discussion. Hodges reviewed the contract and noticed that it did not include a reservation of her royalty and mineral interest.  Hodges talked to Manske's wife, Judy Charland-Manske, and informed her of the missing reservation clause.  Charland-Manske, who also worked at Panian & Mash, told Hodges to sign the contract and return it to her. Charland-Manske said she would then correct the contract to add the reservation of the royalty and mineral interest.

Just above the signature lines, the contract contained a notice to the effect that, if the parties did not understand the contract, they should consult an attorney about the contract because real estate agents cannot give legal advice.  The contract also contained a mediation provision that required "any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion" to be submitted to mediation.  Lastly, the contract contained a clause that provided as follows: "This contract contains the entire agreement of the parties and cannot be changed except by *their* written agreement" (emphasis added).  Hodges signed the contract, without the inclusion of the reservation of her royalty and mineral interest, and returned it to Charland-Manske.

---

[3]The contract was an unimproved property contract, Form No. 9-7, which was promulgated by the Texas Real Estate Commission (TREC).  The contract does not have an execution date on it, and there is no reference in either McCall's or Hodges's affidavits as to who drafted the contract, who made the handwritten changes, or when the parties signed the contract.

[4]Hodges stated in her affidavit that Jacy Gates, another agent who also worked for Panian & Mash, represented the Rosses.

## B. *First Texas's Role in the Transaction*

The contract contained terms that named First Texas as the escrow agent to close the transaction. However, First Texas was not involved in the negotiation of the contract and did not draft the contract. First Texas's lawyers, who are part of the law firm of Bradshaw & McCall, LLP, did not represent Hodges, and she was not a client of First Texas. First Texas received the contract on January 22, 2010;[5] the contract did not contain a reservation of any royalty or mineral interest to Hodges. By the time that First Texas received the contract, both the Rosses and Hodges had signed it. The Rosses deposited an escrow payment of $2,000 with First Texas. The record also indicated that one of the real estate agents sent First Texas a proposed unexecuted amendment to the contract—to include a reservation of her royalty and mineral interest—with a request to have it executed at closing.[6]

## C. *The Closing*

McCall stated in his affidavit that, on the day of closing, Hodges contacted First Texas's office and told First Texas that she received a royalty payment from the real property and that she wanted to reserve her royalty and mineral interest. First Texas told her that the contract did not address her royalty and mineral interest and that she should contact Mankse. Manske contacted First Texas that same day and was told that the contract did not contain terms that addressed the reservation of Hodges's royalty and mineral interest. Hodges stated that Manske arrived at First Texas's office and spoke with McCall about the contract. Manske and Hodges then left the office and went to Manske's house to retrieve something. Afterward, both

---

[5]There is no evidence in the record to indicate when Manske and Hodges received a signed copy of the contract. There also is no evidence to indicate when the Rosses received their signed copy of the contract.

[6]The proposed amendment is not part of the record.

Manske and Hodges returned to First Texas's office and met with McCall about the contract.

McCall indicated that Manske sent First Texas a proposed unexecuted amendment to the contract, to include a reservation of royalty and mineral interest, with a request to have it executed at closing. When Hodges attempted to have the contract amended, by having the Rosses sign the amendment, the Rosses refused to accept the change and refused to sign the amendment. The Rosses demanded that the transaction close as outlined and agreed upon in the contract. Hodges initially refused to sign a deed and complete the closing. But a short time later that day, she signed a deed that had no reservation of her royalty and mineral interest. After the deed was signed by Hodges, it was recorded.

*D. Hodges's Allegations and Suit*

Hodges sued First Texas for fraud, negligence, breach of fiduciary duty, breach of duty as a title company or escrow officer, deceptive trade practices, and civil conspiracy.[7] Hodges stated in her affidavit that she had lost "thousands of dollars of mineral and/or royalty interests" because she was forced to sign the deed or "go to jail." Hodges further stated in her affidavit, which was attached to her response to First Texas's motion for summary judgment, that she only signed the deed because First Texas's lawyer, McCall, had told her at the closing that, if she did not close the transaction, "the Rosses could sue [her] for Breach of Contract" and that, "if [she] lost," she "would 'go to jail.'" She argues in her response that First Texas had a duty to treat both sides "fairly" and be the "gate keeper to a fair

---

[7]Appellant actually filed two lawsuits: Cause No. 48,078-A and 48,079-A, but the latter case is not part of this appeal.

deal for both sides." Hodges asserts that the closing should have been delayed until a clause that reserved her royalty and mineral interest was added to the contract.

### E. First Texas's No-Evidence Motion for Summary Judgment and Hodges's Response to the Motion

First Texas moved for summary judgment on no-evidence grounds as to the elements of (1) duty, (2) breach of any duty, (3) causation, and (4) damages for all of Hodges's claims.[8] Hodges filed evidence[9] with her response and asserted that First Texas breached its duty to treat both parties "fairly." Hodges argued that there was a "mistake of fact" that required the contract to be modified to include the clause that reserved her royalty and mineral interest. Hodges asserted that First Texas refused to delay the closing to allow the error in the contract to be "rectified."[10] Hodges also argued that First Texas did not advise the buyers of the mistake in the contract and also refused to properly advise her of the legal implications of not going through with the closing. Hodges further alleged that, in McCall's affidavit, McCall addressed his conversation with the Rosses but failed to address his conversations with Panian & Mash's brokers. Thus, First Texas, according to Hodges, chose sides and "sided" with the Rosses when it went through with the closing. Hodges also alleged that First Texas made a material misrepresentation when its agent, McCall,

---

[8]First Texas also moved for summary judgment on traditional grounds.

[9]Hodges attached to her response to First Texas's motion for summary judgment the following: (1) her petition; (2) First Texas's Special Exceptions and Answer; (3) First Texas's Responses to Hodges's Request for Disclosures; and (4) her and her attorney's affidavits. She also referenced the contract.

[10]The odds that the dispute between the parties could have been "rectified" short of a lawsuit were remote. As previously noted, the Rosses did not agree to a reservation of the royalty and mineral interest. Furthermore, there is no evidence in the record that Hodges proposed or would have agreed to lower the sales price to include this clause.

6

told Hodges that she would go to jail if she did not sign the deed. Hodges claimed that First Texas engaged in fraud and deceptive trade practices.

The trial court granted First Texas's motion and made its order final when it severed Hodges's claims against First Texas into a separate cause number.[11]

## II. *Issues Presented*

Hodges asserts in two issues on appeal that the trial court erred when it granted summary judgment in First Texas's favor because First Texas was not entitled to judgment as a matter of law and because there was more than a scintilla of evidence to raise a genuine issue of material fact on her claims. We will first address First Texas's no-evidence motion for summary judgment.

## III. *Standard of Review*

A party that files a no-evidence motion for summary judgment asserts that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof. *See* TEX. R. CIV. P. 166a(i). The adverse party then must respond with evidence to raise a genuine issue of material fact on each of the challenged elements in the claim or defense. *See id.* With a no-evidence motion, we review the evidence in the light most favorable to the nonmovant, and we disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). As the court outlined in *King Ranch*:

> A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no

---

[11]Cause No. 48,398-A.

more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch*, 118 S.W.3d at 751 (quoting *Merrell Dow*, 953 S.W.2d at 711). A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard when we review a no-evidence summary judgment that we apply when we review a directed verdict. *Id.* at 750–51.

## IV. *Analysis*

Where, as here, the trial court does not specify the ground or grounds on which it relied in granting summary judgment, we must affirm the summary judgment if any summary judgment ground advanced by the movant is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### A. *Hodges's Summary Judgment Evidence*

Hodges attached to her response (1) her petition, (2) First Texas's Special Exceptions and Answer, (3) First Texas's Responses to Hodges's Request for Disclosures, and (4) her and her attorney's affidavits. She also referenced the contract. Normally, in cases of this nature, pleadings are not competent evidence even if they are sworn or verified. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (citing *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971)); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Hodges may not rely on her petition as competent summary judgment evidence. We also note that First Texas's responses to Hodges's request for disclosures and First Texas's pleadings contain no admissions. In addition, the affidavit of her attorney only addresses the issues of

attorney's fees.  What remains of her summary judgment evidence is the contract and her affidavit.

### B. First Texas's No-Evidence Challenge to Causation

Even if we assume, which we do not hold, that First Texas owed and breached some duty to Hodges, under a fraud, negligence, breach of fiduciary duty, or breach of a duty as an escrow agent theory, her claims fail because she has presented no evidence to raise a genuine issue of material fact on the challenged element of causation.  *See Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (trial court must grant a no-evidence motion for summary judgment unless the respondent to the motion produces summary judgment evidence raising a genuine issue of material fact).  Fraud requires proof of injury as a result of the false misrepresentation. *Herod v. Baptist Found. of Tex.*, 89 S.W.3d 689, 694 (Tex. App.—Eastland 2002, no pet.).  Negligence and breach of fiduciary duty also require proof of proximate cause.  *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (negligence); *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (breach of fiduciary duty).  Proximate cause is generally a question of fact for the jury, but proximate cause may be established as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion.  *Boyd v. Fuel Distribs., Inc.*, 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied) (citing *Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 104–05 (Tex. 1977)).

The two elements of proximate cause are "foreseeability" and "cause in fact." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citing *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992)). "'Foreseeability' means that the actor, as a person of ordinary intelligence, should

have anticipated the dangers that his negligent act created for others." *Travis*, 830 S.W.2d at 98 (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985); *Mo. Pac. R.R. Co.*, 552 S.W.2d at 103). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred. *Id.* (citing *Kerby v. Abilene Christian Coll.*, 503 S.W.2d 526, 528 (Tex. 1973)); *see W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005) (citing *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003)). Cause in fact must be proved by evidence of probative force and not by mere conjecture, guess, or speculation. *Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996).

Despite Hodges's execution of a contract that did not contain a provision that she wanted, she contends that First Title is liable for her subsequent execution of a deed that contained the same terms as those expressed in the contract she executed. We conclude that First Title's actions were not a "cause in fact" of her alleged damages for loss of royalty payments. Hodges's assertion that Charland-Manske said she would amend the contract *after* Hodges signed it, even if true, fails to raise a genuine issue of material fact that First Texas did anything, or failed to do something, that was a "cause in fact" of her alleged damages. Hodges signed the contract before First Texas ever became involved in the transaction. Once Hodges signed the contract, it could not be changed without the written agreement of the Rosses, as provided in the express terms of the contract. Had Hodges simply added the reservation clause to the contract prior to signing it or refused to sign the contract until the reservation clause was added to it, she would not have suffered her claimed damages of the loss of her royalty and mineral interest. Furthermore, had Hodges consulted an attorney *before* she signed the contract, as it expressly urged her to do,

she would not have suffered her claimed damages of the loss of her royalty and mineral interest.

Even if we assume, without deciding, that First Texas knew it had made or had recklessly made a material misrepresentation of fact, upon which Hodges relied, or that it breached a duty, which we do not hold, Hodges has not presented any competent summary judgment evidence to raise a genuine issue of material fact as to how First Texas's actions or statements were a "cause in fact" of the loss of her royalty and mineral interest. We note that the case before us does not involve Hodges's claims against the real estate agent, only those against First Texas. We hold that Hodges has failed to raise a genuine issue of material fact as to proximate causation for her fraud, negligence, and breach of fiduciary duty claims against First Texas.

*C. Hodges's DTPA Claims*

Hodges alleged that First Texas engaged in deceptive trade practices under Section 17.46(b)(5), (12), and (24) and engaged in an unconscionable course of action under Section 17.50(a)(1)(B)(3) and that those acts were a producing cause of her damages. TEX. BUS. & COM. CODE ANN. §§ 17.45(5), 17.46, 17.50(a) (West 2011). A producing or contributing cause is equivalent to the "cause in fact" element of proximate cause. *Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995); *Title Agency of Tex., Inc. v. Arellano*, 835 S.W.2d 750, 754–55 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Producing cause does not include the element of foreseeability embraced within the standard of proximate cause. *Riojas v. Lone Star Gas Co.*, 637 S.W.2d 956, 959 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.). We again note that the case before us does not involve any DTPA claims by Hodges against the real estate agent, only those against First Texas.

Because we have previously held that Hodges failed to adduce competent summary judgment evidence that would raise a genuine issue of material fact as to how First Texas's actions or statements were a "cause in fact" of her alleged damages, we also hold that her DTPA claims against First Texas fail.

### D. Hodges's Civil Conspiracy Claim

Hodges alleged that First Texas, Manske, Charland-Manske, Gates, and Panian & Mash were engaged in a civil conspiracy to get Hodges to close a transaction that did not include the reservation of her royalty and mineral interest in her tract of real property. To prevail on a claim for civil conspiracy, a plaintiff must show that two or more persons sought to accomplish an unlawful purpose or sought to accomplish a lawful purpose by unlawful means that proximately caused damages to the plaintiff. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Civil conspiracy is a derivative tort and is dependent on participation in an underlying statutory violation or tort, other than negligence. *Chu v. Hong*, 249 S.W.3d 441, 444–47 (Tex. 2008); *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Again, Hodges's claims against the real estate agent are not before us, only those against First Texas are before us. Because Hodges has failed to raise a genuine issue of material fact as to proximate causation for her claims against First Texas, as well as producing cause for her DTPA claim against First Texas, her conspiracy claim against First Texas also fails.

### V. *Conclusion*

We have reviewed the record and hold that the trial court did not err if it granted First Texas's no-evidence motion for summary judgment on the causation issue on each of Hodges's claims. We overrule Hodges's issue that pertains to the no-evidence motion for summary judgment. We do not reach her issue that First

12

Texas failed to prove that it was entitled to summary judgment as a matter of law on the grounds outlined in its traditional motion.

VI. *This Court's Ruling*

We affirm the order of the trial court.

MIKE WILLSON

JUSTICE

August 31, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.